JOHN H. MACKPRANG, APPELLEE, V. NATIONAL CASUALTY COMPANY, APPELLANT.

FILED NOVEMBER 20, 1934. No. 29010.

*Charles H. Slama,* for appellant.

*Hendricks & Kokjer, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and REDICK, District Judge.

DAY, J.

This is an action on an insurance policy. Jury was waived, and, upon trial to court, judgment was rendered against the insurance company.

The policy provides for payments for loss of time on account of illness. The plaintiff became ill on January 20, 1931, and was confined in a hospital at Rochester, Minnesota, until March 5, 1931. During this time, he had an operation, and a drainage tube was inserted in his abdomen, connected with his bladder. He was brought to his home in Cedar Bluffs in an ambulance where he remained until June 8 when he was taken to Clarkson Hospital in Omaha. On June 15 he was returned home, but, on July 6, he was again taken to Clarkson Hospital where he underwent another operation. He remained in the hospital until August 1, after which he returned to his home.

The plaintiff claims that he was totally disabled and continuously confined within the house or in the hospitals on account of said sickness from January 20, 1931, to December 3, 1931, and during this time was regularly visited by a legally qualified physician. Under the provisions of the policy, the insured was required to be "necessarily, continuously and actually confined within the house, and therein regularly visited by a legally qualified physician," to recover for a confining illness. The defendant contends that from March 26 to June 8, the plaintiff was not so confined within the house. For an illness "necessarily, continuously and actually confined within the house," the policy provided indemnity for a period of 100 weeks. For a nonconfining illness, the company's liability is only for 10 weeks. The insurance company contends that its liability in this case is for a confining illness from January 20 to March 26 and a nonconfining illness from March 26. The defendant sent the plaintiff its check com-

puted upon this basis. The plaintiff did not return the check, but notified the company he would not accept it as full settlement and brought this action to recover the weekly indemnity for the full period upon the claim that he was confined within the house according to the terms of the contract all of the time.

The controversy concerns the nature of the plaintiff's illness from March 26, 1931, until June 8, 1931. If the plaintiff was necessarily, continuously and actually confined within the house during this period, the judgment should be affirmed. There are two occasions upon which the defendant relies principally to establish that plaintiff was nonconfined within the house. The plaintiff had been bookkeeper of the Bank of Cedar Bluffs that failed in January, 1930. His physician was chairman of the depositors' committee. The committee did not understand some things about the books of the bank, and the plaintiff was taken to the bank on March 26, 1931, for the purpose of explaining to and assisting the committee. The plaintiff was also village treasurer and at another time went to the bank to get the bookkeeper to make out his report as such treasurer. These were situations which would make unusual appeal to the plaintiff. These are the only two trips from the home during that time that are supported by positive and direct evidence. Inferences are drawn from the defendant that the plaintiff would make other trips but are not supported by any evidence, and the plaintiff was not asked directly concerning them when he was on the witness-stand. It appears that the plaintiff was upon a few occasions out on the porch in the sunshine. Certain statements made by the plaintiff to the defendant and other insurance companies said that he was not actually confined all of the time. The defendant would create the impression that the plaintiff during this period was convalescing and that his condition was improving every day. This was not the case. When the plaintiff came home from Rochester on March 5, he had a tube inserted through his abdomen into his bladder. A future operation

was necessary when his strength could be increased sufficiently. The plaintiff's disability was one illness lasting from January 20 to December 3 and was not one illness from which he recovered, and then another.

The plaintiff was suffering from a serious illness. He suffered great pain and hypodermics were frequently necessary during all this period. In addition to the operation in Rochester, it was necessary that he had an operation upon his prostate. He was actually within the house all of the time except on the occasions heretofore noted and most of the time he was in bed or on a couch. The seriousness of his illness is important only as throwing light upon the question as to whether or not he was continuously confined. Upon the two occasions when the plaintiff was taken from the house, he performed no services except that of imparting to others information which was peculiarly within his own knowledge. The effort required for either trip was not equal to that required in making the trip from Rochester, Minnesota, to his home, nor that required by him in making the two round trips to the Clarkson Hospital in Omaha.

The insurance company does not contend that the removal of plaintiff to the hospital in Omaha and back to his home upon two occasions broke the continuity of his confinement "within the house," but rests its case upon what transpired from March 26 to June 8 at plaintiff's home in Cedar Bluffs.

In *Breil v. Claus Groth Plattsdutschen Vereen,* 84 Neb. 155, this court held that a member of a mutual fraternal society which provided for sick benefits for members whose sickness was such that he "must remain constantly in the house," and under the care and treatment of a registered physician, could recover, "although at intervals he may occasionally step into his yard, or make visits to his physician, or other short and unusual trips." The basis of this decision was that the insured was unable to resume the ordinary duties and pleasures of life. It was not judicially determined by strict construction of words that

confinement in the house meant confinement within the four walls. At the time the *Breil* case was decided the language used here, "within the house," had not been passed upon by the courts. It has been inserted in insurance policies to limit liability in recent years. While the language of the *Breil* case is similar, yet that case determined that it referred to a degree of disability. Until recently, the language usually used was "confined to the house" and this was construed liberally, and, ordinarily, one was held entitled to recover even though he left the house.

The cases directly in point seem to be in hopeless conflict. *Rocci v. Massachusetts Accident Co.*, 222 Mass. 336, holds that "continuously confined within the house" in its common significance means uninterruptedly, an unbroken sequence, without intermission or cessation, without intervening time; that it should not be given a constricted interpretation as applied to the subject-matter such as to prevent removal of one ill from home to hospital and back again, or from one house to another in case of some exigency. This same case was before the court on a second appeal, *Rocci v. Massachusetts Accident Co.*, 226 Mass. 545, where the court held: "Ordinarily a person confined to the house by sickness is confined to one house. But if an exigency arises one confined to the house by sickness * * * can be carried to another house. Where a person confined * * * to the house by sickness is carried to another house * * * it is a question for the jury whether the fact that he was carried to the other house showed that he was not sick to the degree described on the one hand or on the other hand whether there was an exigency which made it necessary that he should be carried to the other house though he was sick to the required extent." The appellant relies upon this case, but it will be seen by the foregoing quotation that the court uses the words "to the house" when the policy used "within the house." The court was not as careful in its language as the insurance company, which would indicate that degree of illness was

a controlling factor. The majority of courts hold that the words "confined to" do not mean actual confinement within the four walls, but a degree of sickness. See note Ann. Cas. 1915A, 262. But a different view is held by some courts to the effect that the insured must substantially comply with this restriction to recover, as in *Pirscher v. Casualty Co. of America*, 131 Md. 449, in which case the insured visited his physician daily, played golf, and took a trip to Atlantic City. After all, it seems that the only logical distinction between cases must rest upon the facts.

An examination of the few cases where the exact language of the policy here is considered by the court shows a wide divergence. A careful reading of these cases discloses that the decision in each case was justified by the facts. The confusion arises only in an effort to harmonize the general rules announced. In *Garvin v. Union Mutual Casualty Co.*, 207 Ia. 977, 61 A. L. R. 633, it was held that "continuously confined within the house" covered the period insured was in a hospital, and for such time as he was temporarily absent from his house to consult a physician in the town where he lived, and covers journeys made by him under the advice of a physician in quest of his health to distant points where he was confined in a hospital. How much of the time an insured is substantially confined within the house and entitled to recover indemnity under the language of the policy is a question of fact for the jury, say the Iowa court. But recovery was not allowed for a period of convalescence when he was out-of-doors a large part of the day, drove his car several thousand miles, and sought employment elsewhere. This Iowa case reviews many cases on confinement to the house. It also cites *Jentz v. National Casualty Co.*, 52 N. Dak. 688, in which the policy used the clause "continuously and actually confined within the house," and the court approved an instruction to the effect that because a man is able to walk from his home to his doctor's office for treatment or to take a railroad train to a hospital for treatment does not necessarily break the continuity of the confinement to the house.

A recent case, *Massachusetts Protective Ass'n v. Oden*, 186 Ark. 844, indicates the wide diversity of views upon this question. There the insured, who was totally disabled, on advice of physicians, took frequent short automobile rides and a train trip to the seashore, was held not precluded from recovery under the policy for necessary confinement within the house.

It is insisted that the parties have a right to make a contract in any form they desire. There can be no question as to this rule. It is likewise true that the court cannot rewrite or extend the contract. But an insurance contract is never made as a result of negotiation and discussion between the parties. The contract with its restrictions and limitations is not as well understood by the insured as by the insurer. The appellant's attorney in oral argument stated that this was a cheap policy of limited liability ($57 a year). The insured bought what he thought was protection against loss from disability. He was taken from the house on urgent necessity of a quasi-public business, that of a bank of which he had been bookkeeper. He performed no work, nor is it contended that he was able to do so, but imparted information about the bank to a depositors' committee. This served no purpose of his own. Another time he was taken to the bank for a similar purpose relative to the village finances of which he was treasurer. His physician, says the appellant, stated it would not hurt him. It is true he did not die as a result of the exposure. He was not going about freely either for pleasure or for business. But from the date of these unusual trips the insurance company seeks to determine its liability under the policy, although the plaintiff was totally disabled for weeks thereafter. We are impressed by the language of *Garvin v. Union Mutual Casualty Co., supra*: " 'Strictly and continuously confined within the house' in its most literal interpretation would require that the insured stay constantly within the four walls of the house. Such an interpretation would prevent recovery if an emergency, such as a fire, should arise, and

the insured be removed from the house. It would preclude recovery in the event of transportation in an ambulance to a hospital, even for emergency treatment. It would bar recovery if the insured sat upon an uninclosed porch of the house, or slept upon a sleeping porch that was not 'inclosed within the house.' Such narrow and limited construction should not be adopted in the interpretation of contracts of this character." See annotation 61 A. L. R. 642.

Again, let us add that one who is sick is usually optimistic about his condition. The strict interpretation suggested by the defendant would terminate liability if one who had been ill overestimated his strength and left the house with the result that he was forced to return soon. We are disposed to adopt the view expressed in some of the cases against a narrow and constricted interpretation of the policy. Where an insured, totally disabled, is taken twice in a car a distance of a few blocks for a short time to impart information particularly within his knowledge about a business with which he had been connected, but performs no work, he is not prevented from recovery of benefits under a health insurance policy for period which insured is "necessarily, continuously and actually confined within the house."

Under the circumstances in this case, the insured made an unusual trip, not for his own interest or pleasure, but to assist others by imparting information about the bank and about the village treasurer's books. To terminate his insurance under these facts would be to penalize him for making an extraordinary effort. After all, it is a question of fact which was submitted to the trial court instead of a jury. The evidence supports the finding, and it will not be disturbed.

The insurance company sent plaintiff a check in full settlement of its liability under the policy according to its interpretation. The insured did not return the check, although he notified the company that he would not accept it in settlement. This action was subsequently brought to

recover a larger amount. The check was tendered back in court and is an exhibit in the bill of exceptions. The defendant insists that failure to return this check constitutes acceptance. This case comes clearly within the rule announced in *Babson v. Crete Mills,* 123 Neb. 175, and as applied to the facts in this case is: Generally, claimant's failure to return check tendered in full settlement does not constitute "payment" where claimant indicates his intention not to so receive it.

This was a law action, tried to the court without a jury. We find no reversible error in the record.

AFFIRMED.