HENRY L. PAGE ET AL., APPELLANTS, V. JANET I.
ANDREASEN ET AL., APPELLEES.

264 N. W. 2d 682

Filed April 19, 1978.   No. 41386.

Michael O. Johanns of Peterson, Bowman, Coffman & Larsen, for appellants.

Robert M. Hillis of Yost, Schafersman, Lamme & Hillis, for appellee Orval Andreasen.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action by the buyers of a registered paint horse to recover damages for misrepresentation because the horse purchased had been freeze altered to enhance the white markings on the horse. This action was brought against the owner and seller of the horse, Janet I. Andreasen and her father, Orval Andreasen.   The trial court granted a sum-

mary judgment to Orval Andreasen and plaintiffs appeal. We affirm.

Plaintiffs purchased Deano's Cryin Time, a registered paint horse, from Janet I. Andreasen for $900. Janet was the sole owner of the horse from the time it was foaled. She lived with her parents on their acreage. The horse was kept on the acreage in a pasture rented to Janet. Payment for the horse was made by check, made out solely to Janet. The check was deposited in her personal savings account, although her father and mother were listed as joint owners of the account. The record is undisputed that all deposits and withdrawals to the account were made solely by Janet.

During the negotiations for the sale of the horse, Mrs. Page made three trips to the Andreasen acreage. On the last two trips she was accompanied by Mr. Page. Orval Andreasen was present during one of the latter trips. All the negotiations were between plaintiffs and Janet I. Andreasen. Orval testified he did not enter into the negotiations or discuss the horse with the plaintiffs, with the exception of some general conversation about it. The depositions of all the parties are a part of the record herein. There is no evidence that Orval ever represented to either of the Pages that he had any ownership interest in the horse.

The testimony of Henry L. Page as to his conversation with Orval Andreasen is as follows: "Q- Could you — did you ever see Mr. Andreasen? A- Yes, I did. Q- And any conversation with Mr. Andreasen? A- Yes. Q- Regarding the horse? A- Yes, the horse was the subject. Q- Could you tell me the extent of your conversation and what was said? A- Not specifically. Q- Not specifically? A- We talked about the horse and what a nice horse it was."

Linda Page's testimony as to her conversation with Orval Andreasen is as follows: "Q- All of those negotiations took place with Janet, is that correct?

A- Most of it, other than what his comments were in between. Q- What type comments did he make? A- Well, he wanted to know one time if I wanted to see the registration papers and I said, 'No, there is no need to really look at her registration papers.' I didn't have to see. I didn't know for what reason I had. You don't have to see those until you take the horse home. And just general conversation with him. Q- Did he ever tell you that the horse was his? A- I don't recall. I don't recall that.''

The above testimony is the only direct evidence adduced by the Pages to support their claim of fraudulent misrepresentations made to them by the defendant Orval Andreasen. They argue this evidence is more than sufficient to raise an inference that Orval is liable to them on their petition by virtue of his close relationship with his daughter Janet, and his connection with the facts and circumstances surrounding the subject matter of the action.

They state in their brief: ''As pointed out in the statement of facts, the evidence presented by plaintiffs shows: (1) that the horse was kept and cared for on Orval Andreasen's farm; (2) that the purchase money paid by the plaintiffs for said horse was deposited in an account upon which Orval Andreasen's name appeared; (3) that Orval Andreasen was present during at least a part of the negotiations between plaintiffs and defendants, and made comments during such negotiations; (4) that Orval Andreasen took an active interest in the raising and showing of paint horses with his daughter, Janet Andreasen; (5) that Orval Andreasen was named the breeder of the subject horse on its certificate of registration; and (6) that Orval Andreasen worked closely with the codefendant, Janet Andreasen, in registering and showing paint horses.

''In view of this evidence, there is certainly an inference to be drawn therefrom that Orval Andreasen, by virtue of his close association with Janet An-

dreasen and the subject horse, was an agent, co-conspirator, or joint tort-feasor with the defendant, Janet Andreasen.''

The essential elements required to sustain an action for fraudulent misrepresentation are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage. Bellairs v. Dudden, 194 Neb. 5, 230 N. W. 2d 92 (1975).

Fraud is never presumed but must be established by the party alleging it by clear and satisfactory evidence. McGinty v. McGinty, 195 Neb. 281, 237 N. W. 2d 855 (1976).

It is evident the plaintiffs are attempting to sustain their action for fraud against Orval Andreasen by virtue of the fact that he is the father of Janet, who is an adult and who is living in his home. Plaintiffs are attempting to impose a liability by association.

Orval was the owner of the mare which foaled Deano's Cryin Time. Because of that fact, he is named as the breeder of the horse on its certificate of registration. The horse was registered by its owner, his daughter, who was a member of the American Paint Horse Association. He has never been a member, although a horse owned by him, Deano's Pride, was registered. The registration was made in his name by his daughter.

Orval has owned and shown quarter horses for a period of 25 years. He is a member of the Quarter Horse Association. The dam of Deano's Cryin Time, Deano's Pride, is the only paint horse he has owned. His daughter has been closely involved with him over the years in raising and showing quarter horses. The daughter's testimony is to the effect

that Deano's Pride was bought with her money although she registered it in her father's name.

Analyzing the evidence set out above in plaintiff's statement of the facts, we find nothing to even suggest an ownership of Orval Andreasen in Deano's Cryin Time. The horse was kept and cared for on his acreage, but the pasture in which the horse was kept was rented by Janet, and she was the one who took care of the horse.

The purchase money paid by the plaintiffs for the horse was by check payable to Janet I. Andreasen. It was deposited in an account on which Orval Andreasen's and his wife's names appeared as joint tenants. This fact is undisputed. However, Janet is the only one who made deposits and withdrawals from that account since its inception. It would not be unusual for an unmarried woman living at home to have her parents' names on her account as joint tenants.

Plaintiffs claim Orval was present during at least part of the negotiations and made comments during such negotiations. These negotiations took place at his home, but he was present on only one occasion. His comments on that occasion are set out above. There is nothing in them which would in any way indicate more than a fatherly interest in the transaction.

The record does not sustain the claim that Orval Andreasen took an active interest in raising and showing of paint horses with his daughter Janet. The record would indicate he has owned only one paint horse and that was Deano's Pride, the dam which foaled the horse in question.

Orval Andreasen is named as the breeder of the subject horse on its certificate of registration. The owner of the sire would ordinarily be named as the breeder rather than the owner of the dam. The registration papers were filed by Orval's daughter who was a member of the American Paint Horse Association.

A review of the depositions of the parties shows Janet I. Andreasen to be the sole owner of Deano's Cryin Time. Orval Andreasen made no material representations to the plaintiffs regarding Deano's Cryin Time and took no active part in its sale. Janet alone negotiated the sale of the horse to the plaintiffs.

In support of his motion for summary judgment, Orval Andreasen submitted the affidavit of the defendant, Janet I. Andreasen. It is not disputed in any way. Nowhere in the record do the plaintiffs set out any facts which could support an inference that an agency relationship existed between Janet and her father. Nowhere in the record do the plaintiffs maintain, or even assert, that they were led to believe that Orval and Janet were principal and agent. Plaintiffs were asked in interrogatories to set out a detailed statement of all evidence plaintiffs would offer to support their claim against the defendants. They did not list any witness or set forth any evidence which in any way would tend to prove an actual or apparent agency relationship between Orval and his daughter.

The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity of expense and delay of trial, those cases where there is no genuine claim or defense. Pfeifer v. Pfeifer, 195 Neb. 369, 238 N. W. 2d 451 (1976).

When the allegations of the pleadings have been pierced by a movant for summary judgment and resistance to the motion fails to show that a genuine issue of fact exists, summary judgment should be granted. Gerdes v. Spetman, 197 Neb. 406, 249 N. W. 2d 210 (1977).

On the record herein, the motion of Orval Andreasen for summary judgment was properly sustained. The judgment is affirmed.

AFFIRMED.