WILLIAM G. VILES, APPELLANT, V.
OLD SECURITY LIFE INSURANCE COMPANY AND
COLONY CHARTER LIFE INSURANCE COMPANY OF
LOS ANGELES, CALIFORNIA, SUCCESSOR OF
OLD SECURITY LIFE INSURANCE COMPANY, APPELLEES.

299 N.W.2d 532

Filed December 12, 1980.  No. 43073.

James P. Miller for appellant.

Thomas A. Gleason of Boland, Mullin & Walsh for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, William G. Viles (Viles), appeals from the order of the District Court for Washington County, Nebraska, which sustained the motion for summary judgment of the appellees, Old Security

Life Insurance Company and Colony Charter Life Insurance Company of Los Angeles, California. We affirm.

Sometime in August 1973, Old Security Life Insurance Company (Security Life) issued a disability income plan policy to Viles. The policy had two provisions pertinent to this action. Part 10 under the heading "Sickness Benefits" provided as follows:

"Lifetime Confining Sickness Disability Benefits

"The company will pay at the rate of Two Hundred ($200.00) Dollars per month for one day or more from the date of the first medical treatment and so long as the Insured lives, if Such Sickness causes the Insured total disability, total loss of time, and *requires continuous confinement within doors* except for necessary visits to a physician's office, or to a hospital for treatment, and Such Sickness requires regular and personal attendance by a licensed physician, surgeon, osteopath or chiropractor, other than the Insured." (Emphasis supplied.)

Part 12 under the same heading provided as follows:

"Non-confining Sickness Disability Benefits for Three Months

"The Company will pay at the rate of Two Hundred ($200.00) Dollars per month for one day or more but not to exceed three months, if Such Sickness *does not require continuous confinement within doors* but does cause continuous total disability, total loss of time and requires regular attendance by a licensed physician, surgeon, osteopath or chiropractor other than the insured." (Emphasis supplied.)

The distinction between the two paragraphs is apparent. While both of them require that the insured be totally disabled, if the total disability does not require confinement within doors, the insured is paid $200 per month, not to exceed 3 months. If the disability is of such nature that it requires continuous confinement within doors, the insured receives payment of $200 per month for as long as the insured lives and

the disability continues causing the insured to be confined within doors.

In 1974 and 1975, Viles underwent hip surgery in which both of his hips were replaced. Security Life believed, at that time, that Viles was totally disabled and confined to his home and proceeded to pay him pursuant to Part 10 of the policy. In 1977, Security Life, now believing that they were in error in their original determination, advised Viles that, effective February 10, 1977, they would no longer pay him under Part 10 of the policy. Instead, they believed that he was only entitled to receive payment under Part 12 in that, while he was totally disabled, he was not required to be confined to his home. Viles rejected the company's contention and commenced suit to require Security Life to continue making payment to him under Part 10 of the policy. In response to the suit, Security Life filed a motion for summary judgment and, in support of its motion, took the depositions of both the appellant and the appellant's physician, Dr. Michael O'Neil.

Dr. O'Neil testified by deposition that the hip operation was a success and, therefore, he released appellant to return to work several months after the surgery. Dr. O'Neil did not advise the appellant to stay in his own home and, in fact, stated that the appellant would have been encouraged, within reason, to move about and leave his home for purposes not connected with treatments of his illness. No medical testimony was introduced to the contrary and no medical evidence appears anywhere in this record to indicate that appellant's disability, if it exists, requires him to be confined to his home.

Moreover, Viles' deposition disclosed that he was not, in fact, confined to his home and was able to get about if he so desired. He specifically admitted that he was able to leave the house to go to the store or to the bank and that, since December of 1974, he has been able to go out of the house for anything he de-

sired. He, likewise, is able to drive an automobile as he wishes and does presently drive an automobile. Mr. Viles was asked the following question during the deposition: "Is it fair to say, then, that you were physically able to leave home and travel about for purposes not connected with your illness ever since April of 1974?" His answer was, "Yes." As we have indicated, there have been no counter-showings filed by Viles to refute any of the evidence introduced which would indicate that, while Viles may be totally disabled, he is not, in fact, required to be confined to his home.

Viles argues to us that the provisions of the policy should not be narrowly construed and the fact that there is evidence that he occasionally goes out does not preclude him from recovering under the terms of the policy. In support of this claim, he cites to us the case of *Mackprang v. National Casualty Co.*, 127 Neb. 877, 257 N.W. 248 (1934). The facts of the *Mackprang* case, however, are not at all similar to the instant case. In *Mackprang*, it was clear that the insured was totally disabled *and* confined to his home. We said in *Mackprang* at 884, 257 N.W. at 251: "Where an insured, totally disabled, is taken twice in a car a distance of a few blocks for a short time to impart information particularly within his knowledge about a business with which he had been connected, but performs no work, he is not prevented from recovery of benefits under a health insurance policy for period which insured is 'necessarily, continuously and actually confined within the house.'" We agree with our holding in *Mackprang*.

However, as we noted, the facts of the instant case are not at all similar to *Mackprang*. Not only does Viles admit he goes to various places outside the home on a regular basis, but we are unable to find any evidence in the record which justifies Viles' claim that he is required to be confined to his home. His own doctor testified that he did not, at any time, instruct

Viles to be confined to his home and would have encouraged him to return to work and to get out. Apparently, Viles' decision to do otherwise is of his own choice and without medical necessity. Viles' situation is certainly different from the two isolated trips in a car over a short distance noted in the *Mackprang* decision. Nothing in the evidence establishes that Viles' disability "requires continuous confinement within doors," as required by the terms of the policy. Absent that showing, the company was completely justified in refusing to continue making payments to Viles. Viles, indeed, may be totally disabled for purposes of working. Under those circumstances, he would be entitled to collect under Part 12 of the policy, but not Part 10.

In *Mutual Benefit Health and Accident Assn. v. Milder*, 152 Neb. 519, 548, 41 N.W.2d 780, 796 (1950), we said: "[T]here must be a substantial confinement within doors and regular medical attendance therein by reason of the illness. There may be needful and beneficial interruption of the confinement with the approval and advice of his physician in attempts to restore the health of the insured, and there may be necessary deviation from confinement indoors on account of occurrences or emergencies over which he has no control, but this does not mean that the requirement of confinement within doors may be ignored or disregarded, and recovery had under this provision of the policy merely because insured is totally disabled and suffers a total loss of time. If an insured is able to and does leave his home and travels about as he desires for purposes not connected with his sickness, as the evidence summarized herein shows appellee did for the larger part of the time with which this case is concerned, he is not continuously confined indoors within the meaning of a policy of the kind involved herein." What we said in *Milder* applies with equal force in the instant case.

The trial court, therefore, was correct, under the

facts, in sustaining the motion for summary judgment and not awaiting the taking of evidence at trial. The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity of expense and delay of trial, those cases where there is no genuine claim or defense. *Page v. Andreasen*, 200 Neb. 641, 264 N.W.2d 682 (1978). Where the allegations of the pleadings have been pierced by a motion for summary judgment and the resistance to the motion fails to show that a genuine issue of fact exists, summary judgment should be granted. *Page v. Andreasen, supra.* Under the circumstances, the trial court had no discretion in the matter and was obligated to grant the motion for summary judgment. Accordingly, then, the judgment of the trial court is affirmed.

AFFIRMED.