KERRY-RAND AND ASSOCIATES, APPELLEE, V.
TOM PEDDICORD, APPELLANT.

340 N.W.2d 880

Filed December 2, 1983. No. 82-697.

Michael V. Smith of Smith, King & Waite, for appellant.

John H. Cotton of Gaines, Otis, Haggart, Mullen & Carta, for appellee.

WHITE, and CAPORALE, JJ., and BRODKEY, J., Retired, and BLUE, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a suit by Kerry-Rand and Associates, plaintiff, to recover a real estate broker's commission from Tom Peddicord, defendant. Summary judgment was entered in favor of plaintiff for $99,925.73. Defendant appeals. We affirm.

The petition alleges the parties executed an exclusive "Farm Listing Contract" (Listing) on April 23, 1981, for the sale of a ranch and that defendant sold the ranch himself during the term of the Listing, which obligated him to pay a broker's commission under the express "fees" terms of the Listing. Defendant answered by general denial, and denied that plaintiff either found a buyer or expended any reasonable effort to find a buyer, or that defendant sold the ranch to anyone due to plaintiff's efforts. After discovery was completed both parties filed motions for summary judgment. Defendant did not appear at the hearing. Both parties submitted their motions upon the record made by plaintiff, including depositions of material witnesses.

Peddicord was the owner of Cross Five Ranch located in Cherry County, Nebraska, and Bennett County, South Dakota. About 8,000 Nebraska acres are involved here. Plaintiff is a Nebraska corporation wholly owned by Randy Wobig, a Nebraska licensed real estate broker, Norfolk, Nebraska. Suit is brought under Neb. Rev. Stat. § 81-885.06 (Reissue 1981).

There is no real dispute of these facts. On April 23, 1981, plaintiff and defendant executed a printed

form farm listing contract. The first two paragraphs are material here:

"IN CONSIDERATION of your agreement to list, and to offer for sale the property hereinafter described and to use your efforts to find a purchaser, I (we) hereby give you the sole and exclusive right until November 1, 1981, to sell . . .

"See Attached Addendum     9,954 acres more or less . . . for the sum of Two Million Four Hundred Eighty Eight Thousand Five Hundred & no/100 ($2,488,500.00) dollars . . . ."

"I (We) agree to pay you for professional services a cash fee of 5% of the gross sale price, or $ _____ , said fee to be payable on the happening of any one or more of the following events, to wit:

"*If a sale is made, or a purchaser found, who is ready, willing and able to purchase the property before the expiration of this listing, by you, myself, or any other person, at the above price and terms I (we) may agree to accept*, or if this agreement is revoked or violated by me, you, myself, or any other person, at the above price and terms I (we) may agree to accept . . . or if within 30 days after the expiration of this listing, unless relisted by another agent, I (we) make a sale of said premises to anyone due to your efforts or advertising done under this listing." (Emphasis supplied.)

In early 1981 both Marvin Metzger, a neighboring rancher, and Richard Satterlee, a real estate broker in Martin, South Dakota, discussed the sale of the ranch with defendant. In June 1981 Metzger, acting through Satterlee, made an offer to buy, which was refused by defendant. A second offer was accepted and a written contract executed on July 21, 1981, providing for defendant's sale of the ranch to Cross Heart Ranch Company and Robert A. Metzger for $2,194,000; vendees made a $100,000 downpayment; possession was to be given about July 26, 1981; final settlement was to be November 15, 1981. The con-

tract provided that a $75,000 commission was to be paid by seller to Richard Satterlee, listing broker, and Thomas Metzger, selling broker; their Nebraska licensing qualifications are not shown. Vendee Robert Metzger, son of Marvin Metzger, later assigned his interest to Cross Heart Ranch Company. The contract was performed on November 27, 1981, when defendant conveyed the Nebraska land for $1,998,514.06. The $75,000 commission was paid.

During the period from April 23 to November 1, 1981, no agent of plaintiff brought a prospective purchaser to the ranch. Upon execution of the Listing, plaintiff included the ranch in its inventory of land for sale available to its agents; advertising data was prepared, followed by advertising in newspapers, professional publications, and other shoppers' media. The first advertising was on May 4, 1981; the next began October 2, 1981. Agents of plaintiff also circulated brochures at seminars attended in four major cities.

First, defendant claims as error that the Listing agreement alone entitled plaintiff to a commission as a matter of law; he argues, as indicated in his answer, that plaintiff was required to make some reasonable effort to find a buyer.

In *Chapman Co. v. Western Neb. Broadcasting*, 213 Neb. 322, 327, 329 N.W.2d 107, 110 (1983), we said: "[B]efore a broker may be entitled to a commission, the broker must ordinarily be able to establish at least some causal connection between the broker's actions and efforts in regard to the listed property and the ultimate sale made to the purchaser under an extension contract of the type involved herein." That case is distinguishable. There, a sale was made after the listing expired, and the issue was the application of an "extension clause" and the question whether the broker "solicited" the buyer. Here, the issue relates to a special provision in the Listing purporting to obligate the owner to pay a broker's

commission if the owner sells the land during the Listing term.

" 'There is a sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee.' " *Omaha Nat. Bank v. Goddard Realty, Inc.*, 210 Neb. 604, 609, 316 N.W.2d 306, 310 (1982). Defendant received the benefit of the exclusive services of a licensed broker, and plaintiff promised to use its best efforts to find a buyer. In addition, plaintiff commenced performance by preparing advertising and brochures, and it published at least one ad prior to the alleged sale. There was mutuality of consideration for the Listing. Next, is the "fees" agreement in the Listing enforceable?

The general rule is stated in 12 C.J.S. *Brokers* § 175 at 556 (1980): "A broker is entitled to a commission on a sale by the principal, where, in addition to language indicating an exclusive agency, there is a special contractual provision giving a right to a commission on a sale by the owner." See, also, 12 Am. Jur. 2d *Brokers* § 227 (1964); Annot., 88 A.L.R.2d 936, 966 (1963); *American Property Services v. Barringer*, 256 N.W.2d 887 (S.D. 1977). In *Dial Realty, Inc. v. Cudahy Co.*, 198 Neb. 641, 643, 254 N.W.2d 421, 423 (1977), we considered a similar "fees" provision, and we said that "even if the defendant had not admitted its liability, under the plain and unambiguous terms of the listing agreement, the defendant was clearly liable to the plaintiff. . . ."

"A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used." *Bishop Cafeteria Co. v. Ford*, 177 Neb. 600, 616-17, 129 N.W.2d 581, 592 (1964). Defendant does not claim ambiguity in the contract, and we find none. The "fees" provision in the Listing obligated defendant to pay plaintiff a commission if he sold the ranch during the Listing term.

Defendant next assigns as error that summary

judgment was improper because there was a genuine issue of fact on the question, Was there a sale of the ranch during the broker's Listing? Particularly, defendant claims that he made no sale contemplated in the Listing "fees" agreement because vendees' performance of the July 21 contract was conditioned upon the provision, "CONDITIONS PRECEDENT.

"This agrement [sic] is subject to the following conditions . . . b. The BUYERS obtaining financing." Defendant does not show any fact question concerning this provision.

"The term 'sale' ordinarily means a transmutation of property from one man to another in consideration of some price or recompense in value." *Dial Realty, Inc. v. Cudahy Co.*, *supra* at 644, 254 N.W.2d at 423.

"The primary purpose of the summary judgment statute is to pierce sham pleadings and to dispose of, without the necessity of expense and delay of trial, those cases where there is no genuine claim or defense. . . .

"When the allegations of the pleadings have been pierced by a movant for summary judgment and resistance to the motion fails to show that a genuine issue of fact exists, summary judgment should be granted. . . ." *Page v. Andreasen*, 200 Neb. 641, 646, 264 N.W.2d 682, 686 (1978); Neb. Rev. Stat. § 25-1332 (Reissue 1979).

From the record there was no question of material fact on the sale issue; however, there is the question of whether plaintiff was entitled to a favorable finding that a sale was made on July 21, 1981, as a matter of law. Presented is the mutuality of a written contract between defendant-vendor and nonparty vendees which was routinely and fully performed without regard to the financing condition.

"A condition in a contract which follows liability upon the contract and operates to defeat or annul such liability upon the subsequent failure of either

party to comply with the condition, is a condition subsequent." 17 Am. Jur. 2d *Contracts* § 323 at 756 (1964).

*O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947), involved a vendee-financing condition found to be a condition precedent. That case is clearly distinguishable. It was a suit for specific performance of a contract which expressly limited vendee's obligation to perform, " 'subject on the further condition that after acceptance by mortgaging said land I can borrow $7,312.50 unconditionally from the Federal Land Bank and $2,925.00 unconditionally from the Land Bank Commissioner,' purchase to be closed 'upon completion of the above loans.' " *Id.* at 371-72, 27 N.W.2d at 406.

The July 21 contract contained all of the usual terms of a land sale. The only evidence concerning the vendees' financing being a condition is the lone recitation in the contract, and those words do not condition the buyers' obligation to perform upon obtaining financing. The condition did not void the mutuality of the contract. At most, there was a condition subsequent available to the buyers upon a good faith showing. See, *Pease v. Brown*, 186 Cal. App. 2d 425, 8 Cal. Rptr. 917 (1960); *Clover Realty Company v. McLeod*, 124 Ga. App. 160, 183 S.E.2d 33 (1971); *O'Halloran v. Oechslie*, 402 A.2d 67 (Me. 1979). Plaintiff was entitled to a finding that defendant sold the ranch himself on July 21, 1981, during the Listing term.

Defendant also claims as error that there were questions of fact concerning revocation of the Listing and whether plaintiff made reasonable efforts of sale. Neither was an issue under the pleadings and plaintiff's theory of recovery.

Plaintiff met its burden of proof by a prima facie showing that there was no genuine issue as to any material fact and that it was entitled to judgment as a matter of law, which defendant failed to contro-

vert by any evidence. See *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982).

AFFIRMED.