CLARENCE P. HANDY *vs.* JAMES RICE, and another.

Penobscot.    Opinion March 24, 1904.

*Specific Performance,* Agreement to convey land.  *Payment,* Terms of.  *Bond for a Deed.  Words,* "Before or at the time the same shall become due."
*Trust.   Contempt.   Dower,* Release of.   *Title by descent.*
*R. S. 1903, c. 77, § 17; c. 79, § 6.*
*Stat. 1895, c. 157.*

The clause in a bond for a deed giving the dates of maturity of ·the notes to be paid by the obligee to entitle him to a conveyance, is not necessarily repugnant to a later clause in the bond requiring the obligor to convey the property upon payment of the sum agreed upon "before or at the time the same shall become due."

Even if the payee could not be compelled to surrender the notes, until he had received the full amount of principal and interest to maturity, the obligation to convey the property "before or at the time the same shall become due," is a distinct one, and can be enforced by specific performance in equity.

To entitle the obligee in such a bond to receive a conveyance of the property, he need only pay or tender to the obligee the amount of the principal and the accrued interest to that date, and not to maturity of the notes.

*Quaere:*  Whether the obligor may still have a valid personal claim for interest on the unmatured notes from the date of tender to maturity.

One who takes a conveyance of land which the owner has previously agreed to sell to another, with full knowledge of the existence and terms of the bond and the conditions which prevail as to payments thereon, holds the legal title as trustee of the obligee in the bond.

Where the obligor in a bond for a deed has agreed that the deed shall include
a release of dower, it is no injustice or hardship for the decree for specific
performance to require the obligor to make every reasonable exertion to
comply with his contract.

If the obligor has a wife who refuses to release her dower or right by descent,
proof of such refusal would be a sufficient cause for staying contempt pro-
ceedings against the obligor, until he could have an opportunity to apply
to the court to have the wife's appropriate share of the approved price
deposited with the clerk under the provisions of R. S. 1903, c. 77, § 17.

Proof of full compliance with the provisions of the statute whereby the wife's
"interest or right by descent" has been barred will be accepted to purge all
contempt of court by the obligor for not delivering a deed containing a
release of dower or title by descent by his wife in accordance with the
decree.

Appeal in equity by defendants.    Appeal dissmissed.

Bill for specified performance of the obligor's contract to convey
real estate, as contained in a bond for a deed.

The case is stated in the opinion.

*E. C. Ryder*, for plaintiff.

*Hugo Clark and J. D. Rice*, for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, POWERS,
PEABODY, SPEAR, JJ.

WHITEHOUSE, J.    This is a bill in equity to enforce the specific
performance of an agreement to convey real estate.

By the terms of the bond the plaintiff, a resident of Aroostook
County, agrees to pay to the defendant, James Rice, a resident of
Bangor, "seventy dollars Dec. 1, 1899, fifty dollars July 1, 1900,
fifty dollars January 1, 1901, fifty dollars July 1, 1901, and fifty
dollars Jan. 1, 1902, with interest on the whole at 12 % until paid,
agreeably to his five notes of even date herewith."    And in consider-
ation thereof the defendant, James Rice, agrees that "after the pay-
ment of said sum before or at the time the same shall become due as
aforesaid," he will upon request convey to the plaintiff certain real
estate in Molunkus, in the County of Aroostook, "by good and suf-
ficient deed thereof including release of dower."

The case comes to this court by appeal from the decree of a single
justice, with a report of all the evidence.    The case also presents a

statement .of the findings of fact and of the special rulings of the court below, as follows:

"July 7th, 1899, the defendant, James Rice, living in Bangor gave to plaintiff a bond for a deed for the land in Molunkus described in the bill, and the plaintiff gave the defendant, James Rice, the notes described in the bond. The plaintiff thereupon moved on the land and has since occupied it as a homestead. At the time of executing these papers, Rice told the plaintiff that he might pay the money on the notes to Joseph Davis who lived in Chester and who had some care of some of Rice's interest in that vicinity.

"When the first note was due the plaintiff went to Davis and asked for the note and paid the amount with interest, and took it up. When the second note fell due it was not paid at maturity but a few days afterwards, July 12, the plaintiff paid $25.00 on the note to Davis and had the indorsement made by Davis and agreed to pay the balance in a month or so. He did not pay the balance however till December 27th, when he paid it to Davis and took up the note. In the meantime he had been dunned by Rice for the balance and had been notified that unless paid at once, a forfeiture would be insisted on, but no steps were taken to eject him from the premises nor was he then explicitly notified that no more payments would be received. Mr. Davis sent the amount to Mr. Rice.

"On January 1, 1901, the plaintiff went again to Davis and desired to pay the note then due and also to pay all the unmatured. notes, claiming that by the terms of the bond he could do so and acquire a right to a deed. Mr. Davis said he did not have the notes but would send for them. The plaintiff insisted, however, that he take the money which he finally did, the full amount of all the remaining notes with interest up to that day, giving a receipt. The plaintiff had never been informed that Davis' authority was revoked. This money, Davis sent to Rice with letters of explanation. Rice returned this money and also the balance of the second note which had been paid Dec. 27 to Mr. Davis with the instructions to return the whole to the plaintiff. He retained, however, the remaining notes of the plaintiff, and has never offered to return them until the hearing when he asked leave to amend his answer and offered to

return the notes. Davis offered to repay the money to the plaintiff but the plaintiff refused to receive it. Subseqently, at some date not stated, Davis deposited the amount in the Savings Department of the Eastern Trust & Banking Co. to his own personal credit.

"During these events Mr. Rice conveyed the land to his son the other defendant by a deed not yet recorded, but his son had full knowledge of all the events.

"Upon these facts I rule, (1) that no forfeiture was incurred by the plaintiff,—(2) that his payments to Davis were under the circumstances payments or tenders to James Rice,—(3) that though James Rice may still have a personal claim for interest on the unmatured notes up to their maturity the tender of the amount accrued at that date, Jan. 1, 1901, entitled the plaintiff to a deed under the terms of the bond and is entitled to a conveyance from both defendants according to the term of the bond,—(4) that the plaintiff is entitled to costs."

The final decree provides "That said James Rice and Frank X. Rice shall make, execute and deliver to said Clarence P. Handy a deed of quit-claim with special covenants of warranty against incumbrances created by them of the premises described in the bill of complaint, including the release of dower or title by descent by the wives of said James Rice and Frank X. Rice, within fifteen days from the date of filing this decree in accordance with the terms of the bond."

It is a settled rule in the equity practice of this State that the decision of a single justice upon matters of fact in an equity hearing will not be reversed unless it clearly appears that such decree is erroneous; and the burden to show the error falls upon the appellant. *Young* v. *Witham*, 75 Maine, 536; *Berry* v. *Berry*, 84 Maine, 542; *Hartley* v. *Richardson*, 91 Maine, 424.

A careful scrutiny of all the evidence reported in the case at bar fails to show that the findings of fact above stated were "clearly erroneous;" on the other hand it satisfactorily appears that they were correct.

The conclusions of law deduced by the justice below would seem to follow naturally and necessarily from his findings of fact.

It is a well established principle in equity that the obligee in a bond for the conveyance of real estate containing the usual provision that the bond shall be void upon the execution of a deed of the property, cannot be compelled to accept the amount of the penalty named in the bond in full discharge of the obligation, but upon compliance with the conditions on his part is ordinarily entitled to a specific performance of the bond as a distinct agreement for the conveyance of land.   1 Pom. Eq. Jur. 446; *Dooley* v. *Watson,* 1 Gray, 414; *Bragg* v. *Paulk,* 42 Maine, 502.

In the case at bar it is claimed in behalf of the defense that the plaintiff is not entitled to specific performance in the first place because it is said he failed to pay the amount of the notes and interest at maturity as required by the terms of the bond.

It is true that the balance of $25.00 and interest due on the second note payable July 1, 1900, was not paid until the following December when the amount due was accepted by Mr. Davis, the authorized agent of the defendant, James Rice, and the note duly surrendered to the plaintiff.   The right to insist upon payment of the note at maturity was undoubtedly waived.   The defendants were not prejudiced by the delay in the payment of a note drawing twelve per cent interest, and it was obviously not deemed a sufficient reason for insisting upon a forfeiture.   No measures were taken by the defendants to obtain possession of the premises, and the plaintiff was not then expressly informed that no further payments would be received. When the third note became due January 1, 1901, the plaintiff paid to Mr. Davis, as agent for James Rice, not only the amount of that note, but also of the two unmatured notes due respectively July 1, 1901, and January 1, 1902, with interest to the time of payment; but the defendants now contend that by reason of the omission to include in this payment the interest on those two notes to the time of maturity, amounting to the further sum of nine dollars, the plaintiff failed to perform the conditions of the bond, and is not entitled to a conveyance of the property.   Although by the terms of the bond the obligor agreed to convey the property to the plaintiff upon payment of the amount of the notes "before or at the time the same shall become due," it is insisted in behalf of the defendants that the payee

of the notes could not be compelled to accept payment and surrender the notes until they became due, and that the terms of the notes must control the other stipulation in the bond.    It is manifest, however, that the clause in the bond descriptive of the notes to be paid by the plaintiff is not necessarily repugnant to the later clause requiring the obligor to convey the property to the plaintiff upon payment of the sum agreed upon "before or at the time the same shall become due." If it be conceded that by the terms of the notes the payee could not be compelled to surrender them until he had received the full amount of the principal and interest to the date of the maturity of each note, that fact does not relieve the obligor of the bond from his distinct obligation to convey the property to the plaintiff upon payment of the amount due on the notes either at maturity or at any time before maturity.    By the explicit and unambiguous terms of the bond, the plaintiff became entitled to a deed of the property from the obligor, when January 1, 1901, he paid or tendered the amount of the principal and accrued interest to that date.    Whether defendant James Rice still had a valid personal claim for the interest on the unmatured notes from that date to their maturity, it is unnecessary to determine in this case.    The payment of the consideration draws to it the equitable right of property in the land, and a trust is thereby created in favor of one who pays it.    "While the contractor or vendor holds the legal title, he holds it as trustee for the vendee; and this naked trust, impressed upon the land follows it into whosoever hands it may go by subsequent conveyances until it reaches some holder who is a bona-fide purchaser thereof for a valuable consideration without notice of the original vendee's equitable title."    *Cross* v. *Bean,* 83 Maine, 61; *Pomeroy on Cont.* § 371.

The defendant, Frank X. Rice, having taken his conveyance with "full knowledge of all the events" stated in the findings of facts, is chargeable with the terms of the trust in favor of the plaintiff and may properly be compelled to comply with them.    *White* v. *Mooers,* 86 Maine, 62; *Ricker* v. *Moore,* 77 Maine, 292.

Finally, the learned counsel for the defendants insists that the provision in the decree that their deed shall include "the release of dower or title by descent by the wives of James Rice and Frank X. Rice,"

is wholly unauthorized and in itself a sufficient cause for reversing the decree.

Prior to the enactment of chapter 157 of the Laws of 1895, prescribing the mode of procedure in case of a wife's refusal to release dower, this objection on the part of the defendants might have presented questions of some difficulty and doubt, but the force of the objection seems to be wholly obviated by the provisions of the act above mentioned. Section 10 of that act (R. S. 1903, ch. 77, § 17) provides that if the owner of real estate contracts to sell it and his wife refuses to release her right by descent, the owner may apply to a justice of this court, who may approve the sale and price and order the owner to pay to the clerk for the benefit of the wife such sum as would amount to one-third of the price, if the owner has issue, and one-half if he has no issue, at the expiration of the owner's expectancy of life, computed at three per cent compound interest; and that when the amount has been duly paid and the fact certified and recorded as prescribed in the act, the wife's interest or right by descent in such real estate shall be barred.

By the terms of the bond in the case at bar, the obligor is required to convey to the plaintiff "said real estate and a good and perfect title thereto by good and sufficient deed thereof including release of dower." It is no injustice or hardship to require the defendants to make every reasonable exertion to comply with these stipulations in the bond. If, as suggested by counsel, it should appear that neither of the defendants has a wife, obviously no release of dower would be necessary to give a "perfect title," and the clause objected to would be superfluous and harmless. If, on the other hand, either of the defendants has a wife who should refuse to release her dower or right by descent, proof of such refusal would properly be deemed sufficient cause for staying any proceedings for contempt against such defendant until he could have an opportunity to apply to the court to have the wife's appropriate share of the approved price deposited with the clerk under the provisions of the statute above given, and thus become enabled to give a "good and sufficient deed" without the joinder of the wife. Proof of full compliance with the provisions of this act, whereby the wife's "interest or right by descent" had become barred,

would be accepted as sufficient cause for the final discharge of any rule for contempt that might have been issued.

It is accordingly the opinion of the court that the decree below should stand unreversed and unmodified.

Among the equity powers expressly conferred upon this court by the statute, is the power to compel the specific performance of written contracts; R. S. (1903), ch. 79, § 6; and the circumstances of this case unquestionably present an appropriate occasion for the exercise of it.

*Appeal dismissed.    Decree below affirmed with additional costs.*