REGAN, Judge.
The plaintiff, Bernard Freedman, d/b/a Bernard Freedman Realty Company, instituted this suit against the defendants, Mr. and Mrs. Michael J. Faia, endeavoring to recover the sum of $1,050.00, representing a real* estate broker’s commission which he asserts was earned by virtue of the consummation of an agreement to purchase certain real estate situated in the Parish of Jefferson.
The defendants answered and explained therein that they were illiterate, and that they were led through the fraud or misrepresentation of the plaintiff’s agent to sign the contract when they were not aware of the nature thereof. They further asserted that the agreement contained a potestative condition which rendered it null and void, and also that it was dependent upon various suspensive conditions which were nevdr fulfilled.
From a judgment rendered in favor of the plaintiff for the sum of $1,050.00, together with legal interest and attorney’s fees in the amount of $250.00, the defendants have prosecuted this appeal.
The record reveals that on Saturday, January 4, 1964, the defendants’ nephew, Nick Manno, contacted Hubert Hafer, a real estate agent in the employ of the plaintiff and requested an appointment to see a residence designated by the municipal number 530 Napoleon Avenue, in the City of New Orleans. Hafer met the defendants, who were accompanied by Mr. and Mrs. Manno, that afternoon and permitted them to inspect the property. However, after consideration thereof, they decided that it was unsuitable since it would not accommodate their two automobiles. Hafer then offered to show the defendants another piece of property which kis agency had listed in 112-114 Wright Avenue in Jefferson Parish. The defendants carefully examined this property, and then, accompanied by Hafer, drove to the home of Mr. and Mrs. Manno to discuss the terms of the purchase.
Hafer drew up an agreement to purchase, which was signed by the defendants. The agreement provided that Mr. and Mrs. Faia would purchase the property for $17,500.00, $4,300.00 of which was to be paid in cash and the balance of $13,200.00 was subject to the acquisition of a mortgage loan.
Later that afternoon Hafer secured the acceptance of the defendants’ offer to purchase, and this fact was conveyed to Mrs. Faia that evening by telephone.
On the next morning, which was Sunday, January 5, 1964, Mrs. Faia telephoned Hafer and requested the key to the premises in order to show it to some of her relatives. Mr. Faia, accompanied by two friends, picked up the key about an hour later.
On Sunday evening, Mrs. Faia telephoned Hafer at his home and informed him that she did not wish to comply with the agree *215 ment to purchase since the house did not have water heaters and because there was no place to hang curtain rods. Hafer advised her that the water heaters were located in the attic and that the house was equipped with 2x6 hoard behind the Sheetrock for the purpose of attaching curtain rods to the walls. However, Mr. Faia persisted in her refusal to accept the dwelling, and informed Hafer that her nephew, Man-no, would discuss it with him the next morning.
Manno visited the plaintiff’s office Monday morning at which time he was fully informed of the terms of the agreement. He 'was apparently convinced that the defendants were “wrong” so he offered to pick up the deposit and bring it hack to the office. However, he did not return with the ■deposit, and the plaintiff and Hafer then ■visited the Faia’s residence where they were finally advised that the defendants did not intend to buy the property.
The next day, January 7, 1964, the plaintiff addressed a letter to the defendants requesting the payment of the deposit, "but the letter was unclaimed by them. On January 9, another letter was addressed to -the defendants, and this letter was received hut ignored.
On January 21, 1964, this suit was filed by the plaintiff for his broker’s fee. Ten days later, on January 31, or about three ■days before the contract would expire, the ■defendants applied for a loan from the Eureka Homestead Society. However, the application ¡filed by them disclosed an extremely low income, so that the Homestead was unable to process the loan. The Homestead notified the plaintiff to this effect, but he was never advised thereafter whether the loan had been finally approved or denied. In addition thereto, the defendants did not notify the plaintiff that they were unable to obtain a loan, nor did they request his help in securing one.
It is well settled by the jurisprudence of this state that a contractual provision making a sale contingent upon the purchaser’s ability to obtain a particular loan on the property, is not a potestative condition which renders the agreement null and void as to the obligor under Civil Code Articles 2024 and 2034, but it is a valid sus-pensive condition which imposes upon the purchaser the inescapable obligation to make a good faith effort to obtain the loan.[1]
In conformity with the existing law the lower court found as a fact that the defendants did not make a bona fide or good faith effort to obtain a loan from the Eureka Homestead so as to constitute a reasonable compliance with the terms of the contract, and that the defendants, in effect, refused to request the cooperation of the plaintiff in securing a loan for them as intended by their agreement. The trial judge also rejected the defendants’ contention that they had signed a blank contract
The only question posed for our consideration is whether the foregoing finding of fact by the trial judge was so erroneous and unsupported by the evidence adduced herein as to warrant a reversal by us.
No useful purpose would be served by performing a judicial autopsy upon the defendants testimony which, to say the least, reeks with laborious misrepresentation, evasion and fabrication.
Suffice it to say that the whole tenor of the record leads us to the inevitable conclusion that the findings of the trial court are fully substantiated by the evidence inscribed therein.
For the foregoing reasons, the judgment of the lower court is affirmed. The defendants are to pay all costs incurred herein.
Affirmed.

. See Brewster v. Yockey, La.App., 153 So.2d 489; Morrison v. Mioton, 163 La. 1065, 113 So. 456; Slack v. Munson, La.App., 61 So.2d 618.