Donald O'HALLORAN

v.

Thomas F. OECHSLIE.

Supreme Judicial Court of Maine.

June 6, 1979.

Vafiades, Brountas & Kominsky by Susan R. Kominsky (orally), Marvin H. Glazier, Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A. by George Z. Singal, Bangor, for defendant.

Before POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Following trial of an action seeking specific performance of an agreement for the purchase and sale of land, a justice of the Superior Court entered judgment for the plaintiff and ordered:

That within Thirty (30) days from the date of the entry of this judgment, the Plaintiff and Defendant shall perform all of the obligations incumbent upon them pursuant to the Offer and Acceptance Agreement dated May 18, 1977, and in all regards the sale of the premises set forth in Plaintiff's Complaint shall be according to the terms of said Offer and Acceptance.

The defendant appealed on the grounds that (I) the lack of mutual obligation precluded the existence of a contract, (II) ambiguities within the purchase and sale agreement made specific performance of the contract unenforceable, (III) the court abused its discretion in ordering specific performance, and (IV) the court erred in issuing a decree that it is incapable of enforcing.

We deny the appeal and discuss each of appellant's points sequentially.

## FACTS

On May 18, 1977, the parties signed a document captioned "Offer and Acceptance" in which O'Halloran agreed to purchase and Oechslie agreed to sell property described as

a certain parcel or lot of land with the buildings thereon situated in Eddington, Maine. Bounded and described as follows: a lot having 250 feet frontage on Route 9 and 370 feet in depth.

O'Halloran further agreed to pay five hundred dollars upon acceptance of his offer of $42,500 for the above described property with the balance of $42,000 payable within one hundred twenty days. At the conclusion of the portion of the printed form that set forth appellee's offer, the words "SUBJECT TO FINANCING" were interlineated. Immediately above Oechslie's signature appeared this language: "I (we) do hereby accept the above offer in accordance with its terms and acknowledge receipt of the down payment in the amount of $500."

At the time of the signing of the agreement, O'Halloran gave Oechslie a check for five hundred dollars, and either instructed Oechslie not to cash the check until he had informed him to do so or requested Oechslie to inform him before cashing it so that he could transfer sufficient funds from his

credit union to cover the check. Since payment of the five hundred dollars was understood by O'Halloran to be contingent upon obtaining financing, he testified that he believed the appellant would not desire to cash the check until the time of closing, at which time financing would have been arranged. The contrary impression formed by Oechslie was that the down payment was not contingent upon procurement of financing for the purchase. Until May 31, 1977, however, both parties were prepared to accommodate the understanding of the other regarding the down payment. O'Halloran was willing to make a deposit to cover the check upon request and Oechslie was prepared to retain the check in his possession.

On May 31, 1977, after learning that O'Halloran had not yet transferred funds to cover the check, Oechslie informed O'Halloran that he was returning the check and no longer desired to sell his property. Also on May 31 a deposit of $509.50 was made to O'Halloran's checking account, thereby causing the account to have sufficient funds to cover the check given to Oechslie, who never attempted to cash it.

I

▮ No request for special findings of fact and conclusions of law having been made pursuant to Rule 52(a), M.R.Civ.P., the justice below made none. We must *assume*, therefore, that the justice resolved favorably to the appellee all factual issues necessary to sustain his ultimate decision. *Cobb v. Cougle*, Me., 351 A.2d 110, 111 n.1 (1976); *Atlantic Acoustical & Insulation Co. v. Moreira*, Me., 348 A.2d 263, 265 (1975).

▮ "Our review of the factual findings that we must assume underlie the justice's conclusion are tested by the 'clearly erroneous' rule." *Wilson v. Chadbourne*, Me., 395 A.2d 445, 447 (1978); Rule 52(a), M.R.Civ.P. Findings of fact supported by credible evidence are not clearly erroneous.

*Jolicoeur v. Kennebec Water District*, Me., 356 A.2d 193, 195 (1976); *Gay v. Gay's Super Markets, Inc.*, Me., 343 A.2d 577, 579 (1975). The appellant has the burden of demonstrating the absence of credible evidence supporting the justice's decision. *LaPointe Bros., Inc. v. Farrell*, Me., 363 A.2d 225, 228 (1976).

▮ The record factually supports a finding of mutuality of obligation.

Although the promise of the appellee to purchase the Oechslie property for $42,500 was conditioned upon his ability to obtain financing within one hundred twenty days, the justice below could appropriately infer that the agreement by implication obligated O'Halloran to utilize good faith in attempting to do so. *Wolf v. Crosby*, 377 A.2d 22, 27 (Del.Ch.1977). *See also Rand v. B. G. Pride Realty*, Me., 350 A.2d 565, 567 (1976); *Mezzanotte v. Freeland*, 20 N.C.App. 11, 200 S.E.2d 410, 415 (1973); *Freedman v. Faia*, 176 So.2d 213, 215 (La.App.1965). Appellee did, in fact, apply for financing and, subject to appraisal, received a commitment for a mortgage loan. If appellee had not in good faith applied for financing, he would be in breach of his contractual duty. The agreement, therefore, did not lack mutuality of obligation.

II

▮ Pointing out that the purchase and sale agreement did not contain a legal description of the property to be conveyed, the appellant claims for the first time on appeal that the agreement was too indefinite for the lower court to be able to order its specific performance. Annexed to plaintiff's complaint as "Exhibit A" is a detailed description of two parcels of real estate by metes and bounds, with references to recorded deeds for title sources, alleged to be the property bargained for. Defendant's answer admits this allegation. Any deficiency in the description [1] of the property

1. Having failed to plead or actually litigate the affirmative defense of the statute of frauds, the appellant cannot for the first time raise that issue on appeal. *Cf. Blue Spruce Company v. Parent*, Me., 365 A.2d 797, 801 (1976) (illegality); Rules 8(c), 12(b), M.R.Civ.P.; Field, McKusick & Wroth, *Maine Civil Practice*, §§ 8.19, 12.12 (1970).

which might previously have foreclosed a decree of specific performance was thereby cured. *Regan v. Berent*, 392 Ill. 376, 377, 64 N.E.2d 483, 484 (1945).

### III

■ In ordering specific performance the justice below did not abuse his discretion. Although no direct evidence of the uniqueness of the property to be conveyed was adduced nor monetary damages otherwise shown to be inadequate, a justice may assume the inadequacy of money damages in a contract for the purchase of real estate and order the specific performance of the contract without an actual showing of the singular character of the realty. *Handy v. Rice*, 98 Me. 504, 508, 57 A. 847, 848 (1904); 71 Am.Jur.2d, *Specific Performance* § 112 (1973). *See Forbes v. Wells Beach Casino, Inc.*, Me., 307 A.2d 210, 220 (1973). Nor was it necessary for the appellee to make a tender of the purchase price in order to sustain this action. Following Oechslie's repudiation of the contract, futility excused the tender of the purchase price. *Littlefield v. Brown*, Me., 394 A.2d 794, 797 (1978); *Dehahn v. Innes*, Me., 356 A.2d 711, 719 (1976).

> The purpose of a tender is to put the other party in violation. When the other party has already repudiated the agreement, a tender would be a futile act and is not required by law. It is a well established rule of law that a tender is excused where such tender would be a useless and idle ceremony.

356 A.2d at 719.

### IV

■ Although appellant argues that the "SUBJECT TO FINANCING" condition of the agreement renders impossible the enforcement of the judgment, we do not so construe the mandate. As we have pointed out, the purchase and sale agreement impliedly bound O'Halloran to attempt in good faith to obtain financing for the purchase. The agreement in no sense, however, binds O'Halloran unequivocally to obtain financing, an accomplishment that is dependent upon others who are not subject to the jurisdiction of the court in this case. If O'Halloran, after a good faith effort, is unable to obtain financing to consummate the sale, the contract requires no further act by Oechslie. Each party will have fulfilled the contractual requirements within the court's decree without a purchase and sale having been completed. Conversely, O'Halloran's procurement of financing within thirty days will obligate Oechslie to convey the property described in Exhibit A of the complaint. The conditional nature of the purchase and sale agreement does not in itself cause specific performance of the contract to be impossible to enforce. *See, e. g., Solberg v. Kane*, 536 S.W.2d 885 (Mo. App.1976); *Mezzanotte v. Freeland, supra; Freedman v. Faia, supra; Pease v. Brown*, 186 Cal.App.2d 425, 8 Cal.Rptr. 917 (1960).

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and WERNICK, J., did not sit.