**David J. CANNAN**

v.

**BOB CHAMBERS FORD.**

Supreme Judicial Court of Maine.

Argued June 15, 1981.

Decided July 15, 1981.

Marshall, Raymond, Beliveau, Dionne & Bonneau, Paul R. Dionne, Judith W. Andrucki (orally), Lewiston, for plaintiff.

Sanborn, Moreshead, Schade & Dawson, Peter T. Dawson (orally), Augusta, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS and CARTER, JJ.

CARTER, Justice.

Bob Chambers Ford, the defendant, appeals from a judgment entered in favor of the plaintiff, David J. Cannan, in Superior Court (Androscoggin County) following a jury-waived trial held on December 9–10, 1980. The appeal arises out of a breach of contract action in which the plaintiff sought damages for the alleged improper performance of an automobile engine installation. Of the multiple issues raised by the defendant, only the propriety of the trial court's determination of the liability issue warrants our consideration at this appellate stage of the proceedings. We affirm the judgment of the Superior Court.

On September 12, 1977, David Cannan purchased a 1975 used Volvo automobile from Bob Chambers Ford in Augusta. This transaction included a 50/50 used car warranty covering the drive train, transmission, rear end, and engine for the first 30 days or 1,000 miles, whichever occurred first. Pur-

---

suant to this warranty, the parties were to split the cost of any necessary repairs to be performed at the defendant's place of business.

Immediately after consummation of the sale, the plaintiff began experiencing problems with the automobile's warning light system. A series of attempts by the defendant's service department to repair the electrical system proved unsuccessful. This malfunction of the warning light system persisted when on October 21, 1977, while the plaintiff's wife was operating the automobile, there occurred, in the engine, a loud bang, accompanied by a clangorous sound and rising smoke. Mrs. Cannan immediately stopped the automobile and opened its hood to discover the engine aflame.

The next week Bob Chambers assured the plaintiff that the 50/50 warranty would remain effective for replacement of the ruined engine with a "comparable" used engine. The plaintiff agreed in writing to pay a maximum of $470.00 as his share of the replacement costs.

Following installation of the replacement engine in November of 1977, the plaintiff was informed by the defendant's service manager of an existing floor vibration, occurring at a speed of 45–50 m. p. h., which could not be located and corrected. Concerned about the continuing vibration, the plaintiff called the defendant a week later and again was informed that nothing could be done to remedy the vibration.

The plaintiff then contacted another Volvo dealer, Bates & Cunningham of Topsham, which examined the replacement engine. Charles Cunningham, president and general manager of Bates & Cunningham, revealed at trial that the original engine in the plaintiff's Volvo automobile was a 1975 model, and the replacement engine was manufactured in 1974. The evidence clear-

ly showed that the bell housing on the 1975 engine was drilled out in centimeters, and the bell housing on the 1974 engine was drilled out in inches. It was Mr. Cunningham's belief, based upon his personal knowledge of the subject automobile, that the existing vibration resulted from the differing drill measurements of the engines' respective bell housings.[1]

In April of 1979, the plaintiff traded his Volvo at Bates & Cunningham. Following this trade-in, Bates & Cunningham installed another replacement engine and the vibration disappeared.

In the suit arising out of this series of events, the Superior Court made the following pertinent findings:

> [I]n the view of the court, it makes no difference whether the installation of the engines was done under the original warranty or under a subsequent agreement. In either case, *defendant was obligated to perform the repairs properly*. There can be no doubt, and the court finds, that the vehicle acquired a vibration as a result of the installation of the new engine. The vibration was sufficiently noticeable that defendant's service manager called it to the attention of plaintiff prior to delivery of the vehicle. The court finds that it was an unacceptable vibration resulting either from a defective part or improper workmanship in installing the engine. (emphasis added).

Accordingly, the plaintiff was awarded compensatory damages of $470.00 and general damages of $500.00.

## I.

For the first time on appeal, the defendant seeks to raise issues concerning application of the statutory used car warranty provisions of 10 M.R.S.A. §§ 1471 *et seq.* Since these issues were neither plead-

1. That this testimony conflicted with that of Robert Fuller is of no consequence at this stage of appellate review. Mr. Fuller indicated that the 1974 and 1975 engines were comparable in that they were both of the "B–20 series" and the year of the engines made no difference. As fact finder, the presiding justice was free to reject the testimony of Mr. Fuller and accept instead the testimony of Mr. Cunningham. The appellate court will not substitute its evaluation of the credibility of witnesses for that of the presiding justice acting as fact finder. *E. g., Qualey v. Fulton,* Me., 422 A.2d 773, 775–76 (1980); *Butler v. Inhabitants of the Town of Tremont,* Me., 412 A.2d 385, 387 (1980); *Leighton v. Leighton,* Me., 329 A.2d 164, 167 (1974).

ed nor litigated at trial, the defendant cannot now raise them for the first time on appeal. *O'Halloran v. Oechslie*, Me., 402 A.2d 67, 69 n.1 (1979). Where a party seeks to raise an issue for the first time on appeal for the purpose of attacking the judgment from which he appeals, he is held to have waived that issue for appellate review because he failed to submit the question for decision at the trial level. *Emerson v. Ham*, Me., 411 A.2d 687, 690 (1980); *Laurel Bank & Trust Co. v. Burns*, Me., 398 A.2d 41, 44 (1979); M.R.Civ.P. 46.

We reach the same conclusion with respect to the issues, also not brought to the attention of the Superior Court, concerning the sufficiency of the evidence to support the amount of damages awarded the plaintiff. In *Mandarelli v. McGovern*, Me., 393 A.2d 533 (1978), the defendant conceded liability but contested the case on the issue of damages. For the first time on appeal, he challenged a jury award of damages as inadequate. We emphasized that the challenge to the award should have been addressed first by a motion for a new trial at the Superior Court level and that appellate review would be denied except in the possible context of "manifest error—serious injustice." 393 A.2d at 536.

 Here, the defendant failed to challenge the damage awards first by a motion for a new trial in the Superior Court. We see no reason to depart from the rule of sound appellate practice that the Superior Court should have *every opportunity* to pass on questions and objections raised by the parties, thereby potentially disposing finally of the action at the trial level. *See Harrington v. Inhabitants of the Town of Garland*, Me., 381 A.2d 639, 643 (1978). This includes, as in the instant case, challenges to damage awards in jury-waived trials.

Nor need we invoke the "manifest error—serious injustice" standard of review enunciated in *Mandarelli, supra*. The damage awards were not "the product of bias,

prejudice, [or] improper influence," nor were they "reached under a mistake of law or in disregard of the facts." *Walters v. Petrolane-Northeast Gas Service, Inc.*, Me., 425 A.2d 968, 974 (1981), *quoting, S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, Me., 408 A.2d 676, 681 (1979).

## II.

The defendant argues, in appealing the liability issue, that the evidence was insufficient to support the Superior Court's decision on the question of liability. Our function as an appellate court is to make certain that the Superior Court applied the correct rule of law and to ascertain whether the factual findings are supported in the record by credible evidence.

There is implied in every contract for work or services a duty to perform skillfully, diligently, and in a workmanlike manner. In *Armstrong v. Bangor Mill Supply Corp.*, 128 Me. 75, 145 A. 741 (1929), the plaintiff sent a broken crankshaft from his lath mill to the defendant's machine shop for repairs. The crankshaft was not properly repaired, and the mill shut down as a result. This Court characterized as "an elementary principle" the rule that in a contract to repair, the law implies an undertaking on the repairing party's part "to perform the work in a reasonably skillful and workmanlike manner." 128 Me. at 76, 145 A. at 741. Similarly, in *Berman v. Langley*, 119 Me. 124, 126, 109 A. 393, 394 (1920), we indicated that where a defective automobile was returned to the vendor for repairs covered by an existing warranty, it was the duty of the seller "to investigate to discover the cause and *properly* repair" the defect. (emphasis added).[2]

Given the legal duty of workmanlike repair imposed upon the defendant in the instant case, the Superior Court found that the plaintiff's automobile acquired an unacceptable vibration which resulted from installation of the replacement engine and

---

**2.** Likewise, we have recently discussed the duty implied in an oral or written construction contract to perform the work "in a reasonably skillful and workmanlike manner." *Parsons v.* *Beaulieu*, Me., 429 A.2d 214, 218 (1981), *quoting, Gosselin v. Better Homes, Inc.*, Me., 256 A.2d 629, 639 (1969).

which was caused either by a defective part or by improper workmanship. The factual findings of the trial court will not be disturbed on appeal unless found to be clearly erroneous. *Harmon v. Emerson*, Me., 425 A.2d 978, 981–82 (1981); *Depositors Trust Co. v. Blanchard*, Me., 377 A.2d 101, 103 (1977); M.R.Civ.P. 52(a). The burden rests firmly on the appellant to establish the *absence* of credible evidence supporting the decision of the trial court. *O'Halloran v. Oechslie*, Me., 402 A.2d 67, 69 (1979); *Perkins v. Conary*, Me., 295 A.2d 644, 647 (1972).

■ We find that the Superior Court's factual findings are not clearly erroneous, but to the contrary are supported by credible evidence of record. Particularly supportive is the testimony of Charles Cunningham who indicated that the 1974 and 1975 engines were *not* comparable due to the differing drill measurements of the engines' respective bell housings. It was this difference which, in Cunningham's opinion, caused the vibration. Cunningham also testified that when his company's service department installed another replacement engine in the automobile the vibration disappeared.

We conclude on the record before us that this evidence, together with all reasonable inferences to be drawn therefrom, was sufficient to support the decision of the Superior Court.

The entry must be:

Appeal denied.

Judgment affirmed.

All concurring.