STATE OF MAINE                          SUPERIOR COURT
Piscataquis, ss.                        CIVIL ACTION
                                        DOCKET NO. RE-11-019

ALFRED J. STURTEVANT, SR., et al.

                    Plaintiffs,

        v.                              DECISION Received & Filed

                                        JUN 2 5 2013

                                        Piscataquis County
                                        Clerk's Office

MARY A. GIFFORD, et al.,

                    Defendants.

Hearing was held on the plaintiff's complaint for declaratory relief on November 21, 2012. The plaintiff was present and represented by counsel, Charles Cox, Esq., while the defendant was present and represented by counsel, Warren Shay, Esq.

## BACKGROUND

Alfred Sturtevant Sr. purchased a cottage and real estate on Sebec Lake in 1970 for $10,000. Family members, including his mother, sister, and brother were interested in having a cottage at Sebec lake and Mr. Sturtevant had the financial resources to buy one. Because he was an over-the-road trucker who was away for significant periods, he had his paycheck deposited into a bank account of his mother, Adeline J. Sturtevant, and he gave her a power of attorney so she could pay his bills. In fact, his mother and his sister, Roberta White, came to Maine to make the purchase; however, Alfred Sr. provided all of the money for the cottage, which was initially in his name only. In 1975, using her power of attorney, Adeline Sturtevant conveyed the cottage and land to Alfred Sr., his brother William, and sister Roberta A. White. This was apparently done to ensure that Alfred Sr.'s wife would not have an interest in the camp if Alfred Sr. died. Alfred Sr. was not aware of this conveyance of his property when the transaction took place. Alfred Sr. only

1

learned of the conveyance to his siblings years later because he was frequently on the road and did not use the camp, although he paid the utilities and taxes. Upon discovering the conveyance he demanded that his siblings convey the property back to him, but Roberta refused. The parties therefore came to an accord by executing a 1982 agreement in favor of his children, duly recorded in the registry of deeds, stating that "it is our desire to clearly indicate our wishes with regard to the disposition of said real estate in the event of the demise of any of us, or the incapacity of all or the survivor of us." The agreement went on to describe its purpose as being:

> It is our desire that so long as any one or more of the parties hereto remain alive and is/are not mentally or physically incapacitated to the extent that he/she/they is/are unable to utilize said real estate, that the real estate remain in the sole use of the parties hereto or to the survivor(s) of them.

The agreement continued,

> At the time of the demise of the last surviving party hereto, or in the event that all of the parties hereto or the surviving party/parties become physically or mentally incapacitated to the extent that they are unable to utilize said real estate, it is our desire that said real estate be given to the children of the said Alfred Sturtevant, namely Susan Sturtevant, Alfred J. Sturtevant, Jr., and Thomas Sturtevant.

The Court construes the consideration for this agreement as Alfred Sr.'s ratification of the earlier conveyance to William and Roberta by his mother and his relinquishment of his right to challenge that conveyance, while William and Roberta gave up their right to pass on their interest in the property to their descendants.

In the ensuing years, all parties used the cottage as they wished and disputes did not arise. No party alleges that he/she was improperly limited in using the cottage. Eventually, Alfred Sr. and Roberta disagreed on the meaning of the 1982 agreement. Roberta's daughter, Mary Gifford, met with Alfred Sr. in 2007 at which time Mary

2

proposed that she and either Alfred Sr. or Alfred Jr. could become joint owners of the cottage with right of survivorship by getting William to gift his interest to them. Alfred Sr. resisted this suggestion and he and William, who lived in Florida and infrequently used the camp, conveyed their interest in the parcel to Alfred Sr.'s three children, Alfred, Thomas and Susan for no consideration. Later, the children deeded their interest back to their father because he receives federal disability benefits and he "can't give anything away." Upon learning of the conveyance to Alfred Sr.'s children, Roberta conveyed her interest in the cottage and land to her daughter, Mary Gifford, for no consideration. Throughout these maneuvers, the parties continued to use the camp as they had in the past and Roberta continued to organize the schedule of camp use and ensure that camp bills were paid, with contributions from the users.

## ANALYSIS

### 1. *Breach of Contract*

Plaintiffs first seek to have the 1982 agreement between Alfred Sr. and his siblings declared a contract to will that was breached by Roberta. 18 M.R.S. § 2-701. Despite Defendant's contention that the 1982 agreement between the parties was not a contract, but merely a statement of the parties' wishes, the Court is persuaded that the plain language of the document renders it a contract.[1] It is implicit in the agreement that each party will hold an equal share in the property until death or incapacity at which time that party promises to convey by will or otherwise to the remaining sibling(s). Upon the death or incapacity of the last of the siblings, the agreement required that the last sibling

---

[1] In addition to qualifying as a contract to will under 18 M.R.S. § 2-701, the agreement also qualifies as a traditional contract in that it requires a transfer of title in the event incapacity. As explained, this agreement is supported by consideration.

3

convey by will or otherwise his/her interest to Alfred Sr.'s children. This agreement was in writing, signed by all of the parties, and each party made a promise to the other. 18-A M.R.S. § 2-701 makes clear that a contract to will may be enforced when evidenced by a writing signed by the parties. Defendant's contention that that section is inapplicable is without merit. The Court also finds that Alfred Sr.'s agreement to sign the contract, and therefore his ratification of the conveyance to his siblings by his power of attorney in the first instance, was contingent upon the agreement of his siblings to give up any later claim their estate may have in the property in favor of his children.

In the instant case, the evidence preponderates a finding that the contract, though enforceable under 18-A M.R.S. § 2-701 as a writing signed by all parties, was breached first by Alfred Sr. and William when they made an *inter vivos* transfer to Alfred Sr.'s children: Alfred Jr., Susan, and Thomas. This is so because the agreement expressly stated that until the death or incapacity of each of the contracting parties, the property was to be left to the sole use and enjoyment of the remaining members to the agreement. Implicit in that statement is that a conveyance outside of the three siblings before the deaths or incapacities of all of them would be violative of the agreement. Here, Roberta remained eligible under the terms of the agreement to use and enjoy the camp until her death or incapacity; therefore, the conveyance by Alfred Sr. and William to Alfred's children violated the agreement by forcing Roberta to share her use with the children. Similarly, the conveyance by Roberta to her daughter Mary would have violated the agreement, though she asserts that the earlier breach of Alfred Sr. and William eliminated any obligation she had to abide by the terms of the agreement.

4

The Court is empowered to enjoin a breach of contract to preserve the status quo. *See Augusta Steam Laundry Co. v. Debow*, 98 Me. 496, 57 A. 845 (1904). One remedy that is well suited to the present case is that of specific performance, which is an equitable remedy available when no adequate remedy at law is available, *J.B. Brown & Sons v. Boston Maine Railroad*, 106 Me. 248, 255, 76 A. 692 (1909), and permits the Court to order parties to performance their obligations under a contract. *See, e.g., Perron v. Lebel*, 256 A.2d 663 (Me. 1969). Here, there is no adequate remedy at law that would ensure that the entire property passes to Alfred Sr.'s children as was intended by all of the parties in 1982. *See O'Halloran v. Oechslie*, 402 A.2d 67, 70 (Me. 1979) (assumption that legal remedy for the breach of a real estate purchase contract is inadequate). Thus, the Court will specifically enforce the agreement to effectuate an equitable result.[2]

The facts fully, clearly, and convincingly[3] establish that Alfred Sr. only anticipatorily breached the contract because he was concerned that Roberta planned to breach to the exclusion of his children based upon the statements of Roberta's daughter. The Court also finds that William conveyed his interest to Alfred Sr.'s children for the same reason. Thereafter, Roberta conveyed her interest to her daughter Mary in response to the actions of Alfred Sr. and William.

---

[2] The Court notes that even if it had not enjoined the respective breaches by the parties on contract principles, it would impose a constructive trust, *See* 4 M.R.S. § 105 (2010); 14 M.R.S. § 6051 (2010); *Cassidy v. Cassidy*, 2009 ME 105, ¶ 8, 982 A.2d 326 ("A constructive trust may be imposed to do equity and to prevent unjust enrichment when title to property is acquired by fraud, duress, or undue influence, or is acquired or retained in violation of a fiduciary duty."); Horton, *Maine Civil Remedies*, § 9-3 at 207 (2004), on the theory that Roberta perpetrated a constructive fraud on Alfred Sr. by inducing him to ratify the conveyance to Roberta by their mother with the promise that she would convey her interest, at death or incapacity, to his children, and by leveraging her position of trust with him (as evidenced by both her close family relationship with him and her past history of acting on his behalf by traveling to Maine and assisting in the purchase of his property in the first instance). *See Baizley v. Baizley*, 1999 ME 115, ¶ 7, 734 A.2d 1117 (internal quotations and citations omitted).

[3] *See Flagg v. Davis*, 83 A.2d 319 (Me. 1951).

5

The result is that each party has violated the original agreement. Accordingly, the Court orders that the conveyance from Alfred Sr. to his children is declared null and void. Similarly, the conveyance from William Sturtevant to Alfred Sr.'s children is null and void. Finally, the Conveyance from Roberta to her daughter is null and void. The Court declares the title to be as follows: Alfred Sturtevant Sr., William Sturtevant, and Roberta White each own a one-third fee title interest in the property, the conveyance and devisability of which is restricted by the contract between the parties.

The Court further declares that the contract provides that each surviving member of Alfred Sr., William, and Roberta is entitled to the use and enjoyment of the property to exclusion of parties not within that triumvirate until their respective deaths or incapacities as defined by the agreement. Upon that happening, Alfred Sr.'s named children will inherit or be conveyed the fee title to the property from the last surviving member. The Court directs the parties to record this order in the registry of deeds within 30 days and to make complete all necessary conveyances to clear title in the designated parties pursuant to M.R. Civ. P. 70.

The Entry Is:

1. Request for Declaratory Relief is GRANTED. Alfred J. Sturtevant Sr. holds a one-third interest in the property in question. William Sturtevant holds a one-third interest in the property. Roberta Sturtevant holds a one-third interest in the property. Each party is limited by the contact, which is enforceable. Alfred J. Sturtevant Jr., Susan Sturtevant, Thomas Sturtevant, and Mary Gifford each have no interest in the property. The Court orders that the conveyance from Alfred Sturtevant Sr. to Alfred Sturtevant Jr., Susan Sturtevant, and Thomas Sturtevant, dated September 7, 2010, and recorded in the Piscataquis County registry of deeds is null and void. The Court also orders that the conveyance from William Sturtevant to Alfred Sturtevant Jr., Susan Sturtevant, and Thomas Sturtevant dated September 11, 2010, and recorded in the Piscataquis County registry of deeds is null and void. Likewise, the Court orders that the conveyance from Roberta

White to Mary A. Gifford, dated October 7, 2010, and recorded in the Piscataquis County Registry of Deeds is hereby declared null and void.

2. Count II is dismissed as moot, and all remaining requests are DENIED

3. At the direction of the Court, this Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.

Dated: June 25, 2013

Hon. William R. Anderson
Justice, Superior Court