[Civ. No. 24457. Second Dist., Div. Three. Nov. 16, 1960.]

ROBERT E. PEASE et al., Respondents, v. JOHN D. BROWN et al., Appellants.

*Assigned by Chairman of Judicial Council.

Hal L. Coskey for Appellants.

Anderson, Adams & Bacon and Robert L. Bacon for Respondents.

FORD, J.—The defendants appeal from a judgment for specific performance of a contract of sale of land.

Under the contract dated September 14, 1957, the defendants agreed to sell a lot to the plaintiffs for $5,750 in cash. The agreement contained the following handwritten language: "This sale is contingent on construction loan of approximately $11,000 obtained by buyer. Also that 3 homes may be built and contingent on sale of property Escrow # to close November 10, 1957. " A printed provision was: "Time is of the essence of this agreement."

An escrow was opened on September 16, 1957. While it was stipulated at the time of the pretrial conference that in the escrow, opened "for the purpose of carrying out this [sales] contract,"[1] there were included the matters upon which the sale was contingent as stated in the contract, the actual wording of the escrow instructions upon that subject was: "The within escrow is contingent upon the Buyer being able to obtain a building loan for approximately $11,000.00. It is also contingent upon you [escrow agent] being notified by Mr. Conrad [the broker with whom the sellers had listed the property] or myself [buyers] that three houses can be built on the within described property and is also contingent upon the closing of your [escrow agent's] escrow 44-23140." The escrow instructions also contained the following provision: "If the conditions of this escrow have not been complied with prior to the date set out on line 1 [November 13, 1957], or any extension thereof, you are nevertheless to complete the escrow as soon as the conditions, except as to time, have been complied with, unless written demand shall have been made upon you not to complete it."[2]

---

[1] "'Escrow instructions which are merely a customary and conventional means of consummating an underlying executory contract for the sale of real property do not supplant such agreement but merely serve to carry it into effect. [Citations.] Thus, where the terms of an executory agreement for the sale of real property are clarified and elucidated by the provisions contained in escrow instructions, both instruments are to be considered together in arriving at the total understanding of the contracting parties and in fixing their correlative rights and obligations." (*Katemis* v. *Westerlind,* 120 Cal.App.2d 537, at 542 [261 P.2d 553].)

[2] In *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d 537, at pages 543-544, it was said as to such a provision: "Nowhere in the escrow instructions is there any clear-cut language manifesting an intent to make time of the essence. The sole reference therein to this matter appears in the buyers' escrow instructions, agreed to by defendant, providing that if the conditions had not been complied with at the time therein provided, the escrow holder might nevertheless complete the escrow as soon as the conditions (except as to time) had been fulfilled. This somewhat confusing and ambiguous language does not 'clearly, unequivocally and un-

At the pretrial conference, it was stipulated that "a construction loan of $11,000.00 could have been obtained by plaintiffs in regards to the construction they contemplated on defendant's property, [and] that the property in question was zoned to allow the construction on the property of three homes." Consequently, the only factual issue raised at the trial was whether the cancellation of the escrow by the defendants on December 3, 1957, rendered ineffectual the tender by the plaintiffs of the purchase price on December 6, 1957.[3] The findings of fact of the court were in part as follows: 1. The escrow upon which the sale was "contingent" closed on December 5, 1960. 2. Time was not of the essence "in either the escrow instructions or the contract for the sale of the property." 3. At numerous times from November 13 until December 3, 1957, the defendants, through their agent, Harlan C. Conrad [the real estate broker with whom the property had been listed], orally informed the plaintiffs that the plaintiffs would not have to deposit the purchase price for the property until the other escrow had closed. 4. The plaintiffs believed such statements. 5. After November 13, 1957, the defendants never, either orally or in writing, demanded payment of the purchase price of the property from the plaintiffs but "cancelled the escrow and sale without prior notice" on December 3, 1957.

It is not claimed on this appeal that there was not substantial support in the evidence for the findings of fact with respect to the sellers' acquiescence in the buyers' delay in depositing the purchase price. ▊▊ Even when time is of the essence, the provision with respect thereto may be waived by the conduct of the parties. ▊▊ When there has been such

mistakably' show an intent to make time of the essence of the contract. It patently does not expressly declare such to be the intention of the parties, nor does it do so with any degree of reasonable certainty. Escrow instructions containing the identical language were held not to constitute a declaration that time was of the essence. (*Lifton* v. *Harshman*, 80 Cal.App.2d 422, 433-434 [182 P.2d 222].)''

[3]In the joint pretrial stipulation, the factual contentions of the plaintiffs are stated to be that they informed the defendants of their difficulty with respect to the other escrow and that the "defendants orally agreed that the purchase money did not have to be deposited in accord with the instruction in the Escrow''; that the plaintiffs relied on such assurance; and that the defendants cancelled the escrow without notice to the plaintiffs of their "change of attitude towards the delay and without giving plaintiffs a chance to deposit the purchase money."

The factual contentions of the defendants were stated to be that they had no knowledge "of the alleged difficulties of plaintiffs in closing their other Escrow''; that they sought information from the broker but none was given; and that "they closed the Escrow on account of this situation."

a waiver by a party he must, in order to put the other party in default, not only give notice that delay will no longer be tolerated but must allow the other party a reasonable time within which to perform. (*Carberry* v. *Trentham*, 143 Cal. App.2d 83, 89 [299 P.2d 966]; *Lifton* v. *Harshman*, 80 Cal. App.2d 422, 433 [182 P.2d 222].) ██ As has been stated, the provisions relating to the availability of a construction loan and as to the number of houses which could be built on the lot were the subject matter of a stipulation at the time of the pretrial conference. But aside from that, they were obviously for the benefit of the buyers and were subject to being waived by them. (*Johnson* v. *Lehtonen*, 151 Cal.App.2d 579, 582 [312 P.2d 35]; *O'Connell* v. *Zimmerman*, 157 Cal.App. 2d 330, 336 [321 P.2d 161]; see 5 Corbin, Contracts (1951), § 1194, p. 824.) Clearly, the bringing of an action by the buyer for specific performance would constitute such a waiver. (See *Gottlaub* v. *Cohen*, [4]139 N.J. Eq. 323 [51 A.2d 254]; *cf. Sequoia Investment Corp.* v. *Paillard*, 135 Cal.App.2d 166, 172 [286 P.2d 857].) Consequently, under the facts as found by the court, as of the time the suit was brought the plaintiffs were entitled to the equitable relief which they sought (see *King* v. *Stanley*, 32 Cal.2d 584, 592 [197 P.2d 321]; *Van Fossen* v. *Yager*, 65 Cal.App.2d 591, 596 [151 P.2d 14]; *Moore* v. *Heron*, 108 Cal.App. 705, 709 [292 P. 136]; *Major* v. *Price*, [5]196 Va. 526 [84 S.E.2d 445]; 5 Corbin, Contracts (1951), § 1194; Note, 22 A.L.R.2d 508, 522), unless appellant's contention as to the lack of mutuality of obligation, made for the

---

[4]In *Gottlaub* v. *Cohen*, the plaintiffs agreed to buy, and the defendants to sell, certain real estate, the agreement containing a provision that it was made subject to the buyers obtaining "a mortgage of $18,000 in the form of a G. I. loan." On the day upon which title was to pass, the buyers tendered the balance of the purchase price then remaining unpaid, but the sellers refused to execute a deed. The Vice-Chancellor, in denying the motion to dismiss the bill of complaint, stated (51 A.2d, at 256): "The mortgage clause in Gottlaub's contract was inserted for his benefit so that he would not be liable for breach of contract unless he could borrow the money with which to pay for the land. He was at liberty to waive the benefit of this clause and to assume an unconditional obligation to fulfill the contract. This he did by filing his bill so that there is now complete mutuality between the parties. This is sufficient."

[5]In *Major* v. *Price*, the contract contained a clause to the effect that if the land could not be "rezoned for use as a Motel, this contract is null and void." In a suit brought by the buyer to obtain specific performance, the chancellor found that the clause was inserted in the contract for the benefit of the buyer. In answer to the seller's contention that, if such clause was for the buyer's benefit alone, there was a lack of mutuality of remedy which precluded the granting of specific performance, the Supreme Court of Appeals of Virginia said: "Mutuality of remedy

first time on this appeal,[6] has merit. We turn to the question of law so presented.

It is the position of the appellants that "neither the deposit receipt nor the escrow instructions created a binding contract" because "plaintiffs' promise was illusory" in that it was contingent upon the availability of a construction loan, the propriety of building three houses on the property, and the closing of the other escrow. They further assert that, "[t]here being no contract between the parties, defendants were of course at liberty to withdraw the offer at any time prior to its acceptance and therefore the judgment in favor of the plaintiffs was improper and should be reversed."

The applicable law with respect to the problem thus presented is to be found in *Mattei* v. *Hopper,* 51 Cal.2d 119 [330 P.2d 625]. There the written agreement was evidenced on a form commonly known as a deposit receipt. The concluding paragraph of that agreement was "Subject to Coldwell, Banker & Company obtaining leases satisfactory to the purchaser." The leases were to be of shopping center buildings to be constructed. The Supreme Court said, at page 122: "Nor does the provision making the agreement 'subject to' plaintiff's securing 'satisfactory' leases necessarily constitute a condition to the existence of a contract. Rather, the whole purchase receipt and this particular clause must be read as merely making plaintiff's performance dependent on the obtaining of 'satisfactory' leases. Thus a contract arose, and plaintiff was given the power and privilege to terminate it in the event he did not obtain such leases. (See 3 Corbin, Contracts (1951), § 647, pp. 581-585.)"

---

existed in this case when Price notified Mrs. Major . . . that he was electing to take the property whether rezoned or not. Had he failed to comply with the terms of the contract from that time forward Mrs. Major's remedy was open to her. Likewise, mutuality of remedy existed when the bill was filed. . . .'' (84 S.E.2d at 448.)

[6]In *American Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, at 200 [318 P.2d 84], the applicable rule was stated as follows: ''If it be said that the views herein expressed depart from the theory upon which the case was tried the answer is that the rule confining the parties upon appeal to the theory pursued below does not apply to a question which is one of law only (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738]), and that an appellate court is never bound by concessions of counsel as to the applicable law (*Desny* v. *Wilder,* 46 Cal.2d 715, 729 [299 P.2d 257]) or by the interpretation of documents made by the trial court upon the basis of the terms of the written instrument without the aid of other evidence (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 429-430 [296 P.2d 801]).'' (See also *Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534].)

In the discussion of the matter of mutuality of obligation, it is stated at page 122 of the Mattei opinion that: "When the parties attempt, as here, to make a contract where promises are exchanged as the consideration, the promises must be mutual in obligation. In other words, for the contract to bind either party, both must have assumed some legal obligations. Without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created. (*Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660-662 [277 P. 519]; 1 Corbin, Contracts (1950), § 152, pp. 496-502.) Or, if one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration. (See *J. C. Millett Co.* v. *Park & Tilford Distillers Corp.* [N. D. Cal.], 123 F. Supp. 484, 493.) Whether these problems are couched in terms of mutuality of obligation or the illusory nature of a promise, the underlying issue is the same—consideration." As to the matter of the satisfaction of Mattei with respect to the leases, the court said, at page 124: "The standard of evaluating plaintiff's satisfaction—good faith—applies with equal vigor to this type of condition and prevents it from nullifying the consideration otherwise present in the promises exchanged." (See also, 3 Williston, Contracts (rev. ed. 1936), § 675a, p. 1943; Rest., Contracts (1932), § 265, comment a.)

In *Braxdale* v. *Bange*, 166 Cal.App.2d 399 [333 P.2d 420], which was an action for damages for breach of a contract to form a partnership, the last paragraph of the agreement was: "This proposal shall not be binding upon any parties signing unless adequate finances are assured to support the entire endeavor." The court held that, although the plaintiff had the responsibility of securing such financing, under the reasoning of the Mattei case the last paragraph of the agreement did not render it unenforceable.

In *Rodriguez* v. *Barnett*, 52 Cal.2d 154 [338 P.2d 907], one paragraph of the agreement was: "All above items subject to approval of buyers, this agreement is contingent upon their approval." The Supreme Court said, at pages 160-161: "The agreement was neither illusory nor lacking in mutuality of obligation merely because the parties thereto inserted a provision making the purchasers' performance dependent on their satisfaction with the subdivision map to be obtained by them. Contracts making the duty of performance of one of the parties conditional upon his 'satisfaction' are upheld on

the theory that the expression of dissatisfaction must be genuine and not arbitrary, and that an objective criterion,— good faith—controls the exercise of the right to determine satisfaction. . . . The finding and conclusion of law that the plaintiffs' refusal to approve the subdivision map was reasonable support the determination that the objective criterion of good faith was present.''

It is, of course, clear that a contract is not lacking in mutuality of obligation where a contingency, upon the ascertainment or happening of which a party has a right to terminate an agreement, is one over which such party has no means of control. (See *Vitagraph, Inc.* v. *Liberty Theatres Co.,* 197 Cal. 694, 701 [242 P. 709] ; 12 Cal.Jur.2d, Contracts, § 114; 1 Corbin, Contracts (1950), §§ 148, 149, 165; 1 Williston, Contracts (1957), §§ 103, 105, 119; 17 C.J.S., Contracts, § 100, p. 453.)

Under the reasoning of the authorities cited herein, there was the requisite mutuality of obligation in the present case. (See note, 47 Cal.L.Rev. 753.) Such mutuality was not affected by any matter over which the plaintiffs had no control. Insofar as the matters upon which the plaintiffs' performance was dependent involved necessary action on their part, such as the seeking of a construction loan, they were obligated to act in good faith. They were not free to withdraw from the agreement at their own unrestricted pleasure. There is, therefore, no merit in the contention of the appellants on this appeal.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.