Nader SHATERIAN, Plaintiff,

v.

WELLS FARGO BANK, N.A.,
et al., Defendants.

Case No. 11–00920 SC.

United States District Court,
N.D. California.

Nov. 7, 2011.

Neil Jon Bloomfield, Law Office of Neil Jon Bloomfield, Randall L. Hornibrook, Bloomfield Law Group, San Rafael, CA, for Plaintiff.

Christopher Alan Carr, Viddell Lee Heard, Jr., Anglin, Flewelling Rasmussen Campbell & Trytten, LLP, Pasadena, CA,

Nicole Kimberly Neff, Robin Prema Wright, Wright Finlay & Zak, LLP, Newport Beach, CA, for Defendants.

*ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION TO DISMISS AND DENYING WELLS FARGO'S MOTION TO STRIKE*

SAMUEL CONTI, District Judge.

## I. INTRODUCTION

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves to dismiss and strike Plaintiff Nader Shaterian's ("Shaterian") Second Amended Complaint ("SAC"). ECF Nos. 60 ("MTD"); 61 ("MTS"). Wells Fargo's motions are fully briefed, though Wells Fargo has not filed a reply brief in support of its Motion to Strike. ECF Nos. 72 ("MTS Opp'n"), 73 ("MTD Opp'n"), 74 ("MTD Reply"). For the reasons set forth below, the Court GRANTS in part and DENIES in part Wells Fargo's Motion to Dismiss and DENIES Wells Fargo's Motion to Strike.

## II. BACKGROUND

As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded facts in the SAC as true. In 2003, Shaterian purchased a home located at 511 Browning Court, Mill Valley, California. ECF No. 56 ("SAC") ¶ 9. In August 2007, Shaterian sought refinancing of his home "to take advantage of lowering interest rates and to be able to withdraw a portion of the equity in his home to be able to finish needed improvements to his home." *Id.* ¶ 10. Shaterian alleges that he spent roughly $300,000 to build two retaining walls to prevent his home from sliding down the hill on which it was built. *Id.*

Shaterian alleges that, in August 2007, Diablo Funding Group, Inc. ("Diablo")[1] and World Savings Bank ("WSB") qualified him for a new mortgage loan for the property. *Id.* ¶ 12. WSB was a federal savings bank regulated by the Office of Thrift Supervision ("OTS"). RJN[2] Exs. A ("WSB Certificate of Corp. Existence"), C ("Wachovia Mortgage FSB Charter"). WSB changed its name to Wachovia Mortgage ("Wachovia"), but remained chartered under the Home Owner's Loan Act ("HOLA") and overseen by OTS. RJN Ex. B ("Nov. 19, 2007 OTS Ltr."); Wachovia Mortgage FSB Charter. Around November 2009, Wachovia became a division of Wells Fargo, and consequently, Wells Fargo became WSB's successor in interest.

1. Diablo is not clearly identified in Shaterian's Complaint or the papers filed before the Court. Shaterian alleges that Diablo is a California corporation, SAC ¶ 7, and the facts pled suggest Diablo was a mortgage broker.

2. Wells Fargo asks the Court to take judicial notice of a number of documents. ECF No. 62 ("RJN"). Exhibits A–E are government documents Wells Fargo relies on to establish that Wells Fargo is the successor in interest to WSB. Exhibit F is the Deed of Trust. Exhibit G is the Adjustable Rate Mortgage Note dated August 27, 2007 and signed by Plaintiff. Exhibit H is the Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") dated October 6, 2010 and recorded on October 7, 2010. Exhibit I is the declaration of Shaterian in support of an application for temporary restraining order filed in state court. Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. A court may also take judicial notice of a document if the plaintiff's claim depends on the contents of the document, and the parties do not dispute the authenticity of the document. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005). However, the Court may not take judicial notice of the truth of the facts recited within a judicially noticed document. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–90 (9th Cir.2001). The Court GRANTS Wells Fargo's RJN, but limits its review of the exhibits accordingly.

RJN Ex. D ("Off. Cert. of the Comptroller of the Currency").

The type of loan provided to Shaterian was an Option Adjustable Rate Mortgage ("Option ARM"). SAC ¶ 14. Shaterian also describes his loan as a "pick-a-payment" loan. *Id.* ¶ 15. Pick-a-payment loans "allow the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions." *Id.* ¶ 16. Loan documents provided to Shaterian included an Adjustable Rate Mortgage Note ("the Note") and a Truth-in-Lending Disclosure Statement ("TILDS"). *Id.* On August 27, 2007, Shaterian signed a Deed of Trust, and it was recorded on September 13, 2007. RJN Ex. F. ("Deed of Trust"). According to the Deed of Trust, Shaterian received a $985,000 loan from WSB secured by his property. *Id.*

Shaterian alleges his loan was "intentionally designed to result in negative amortization and obligations to pay compound interest." *Id.* ¶¶ 15, 19. He claims he was unaware of the loan's terms at the time he agreed to the loan due to "fraudulent nondisclosure" of its terms and because the closing documents were "executed in blank." *Id.* ¶ 15. He also claims that the disclosures he did receive were misleading. *Id.* ¶ 17.

In April 2010, Shaterian contacted Wachovia (WSB's successor in interest) about obtaining a loan modification, but received no response. *Id.* ¶ 143. In June 2010 John H. Kearny ("Kearny"), a Wells Fargo loan adjustment specialist, contacted Shaterian to assist him with obtaining a loan modification and Shaterian submitted a completed application later that month. *Id.* ¶¶ 144, 147. In August 2010, Kearny informed Shaterian that his application had been rejected but that he could qualify for the loan modification by showing an income of $9,500 per month. *Id.* ¶¶ 144, 148–49. Shaterian eventually increased his income to $15,000 per month by expanding his business and reapplied for the loan modification in both October and November 2010, but he was rejected for a second and third time. *Id.* ¶¶ 150, 152.

On October 7, 2010, Cal–Western Reconveyance Corporation ("Cal–Western"), the substituted trustee on Shaterian's Deed of Trust, recorded a Notice of Default. SAC Ex. 4 ("Not. of Default"). The Notice of Default stated that, as of October 6, 2010, Shaterian had accrued $60,175.64 in arrears. *Id.* at 1. On January 12, 2011, a Notice of Trustee's sale was recorded, setting a sale date of February 1, 2011. ECF No. 1 ("Not. of Removal") Ex. B. Shaterian later filed a Chapter 13 petition in bankruptcy court, staying the scheduled foreclosure sale until July 18, 2011. ECF No. 55 ("July 7, 2011 Order") at 1. It is unclear whether the foreclosure sale has yet taken place.

On January 28, 2011 Shaterian commenced this action in the Superior Court of California, County of Marin. Not. of Removal. Three days later, Shaterian filed a First Amended Complaint ("FAC") in state court. *Id.* Defendants removed the case to federal court on February 28, 2011, *id.,* and moved to dismiss and strike the FAC on March 13, 2011, ECF No. 10. Shaterian later moved for a preliminary injunction to restrain the trustee's sale of his property which the Court ultimately denied. ECF Nos. 16, 20, 52. After denying the motion for a preliminary injunction and learning of Shaterian's bankruptcy petition, the Court granted Shaterian thirty days leave to amend his complaint and denied Wells Fargo's pending motions to dismiss and strike as moot. July 7, 2011 Order at 2. As Shaterian was allowed to file a third complaint, the Court stated that "any claims dismissed on a subsequent motion to dismiss will be dismissed without leave to amend," and that the

Court would only grant additional leave to amend if Shaterian filed a motion under Federal Rule of Civil Procedure 15(a)(2) establishing that justice so required. *Id.* at 2–3.

Shaterian filed his SAC on August 5, 2011. The SAC alleges ten claims: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.;* (2) fraudulent omissions; (3) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.;* (4) breach of contract; (5) breach of implied covenant of good faith and fair dealing; (6) aiding and abetting fraud; (7) violation of California Civil Code Section 2923.5; (8) breach of oral contract; (9) fraud through misrepresentation in oral contract; and (10) declaratory relief. Some of these claims arise from the initial loan agreement; others involve the subsequent foreclosure process and Wells Fargo's refusal to offer Shaterian a loan modification.

On September 2, 2011, Wells Fargo moved to dismiss each of Shaterian's claims. Also on September 2, 2011, Wells Fargo moved to strike Shaterian's punitive damages allegations on the grounds that Shaterian does not allege a proper basis for recovering such damages.

## III. *LEGAL STANDARD*

### A. *Motion to Dismiss*

█ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca,* 633 F.3d 1191, 1204 (9th Cir.2011).

### B. *Motion to Strike*

█ Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank,* 133 F.Supp.2d 1177, 1180 (N.D.Cal.2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.,* 352 F.Supp.2d 1048, 1057 (N.D.Cal.2004).

## IV. *DISCUSSION*

### A. *Wells Fargo's Motion to Dismiss*

#### 1. Claim for Violation of TILA (Claim 1)

█ In his first claim for relief, Shaterian alleges that the Note and TILDS violat-

ed TILA because they failed to "clearly and conspicuously disclose": (1) "that payment schedules are not based on the actual interest rate," (2) "negative amortization," (3) "the legal obligations between the parties," and (4) "the effect of rate and payment caps." SAC ¶ 36. Based on Wells Fargo's alleged TILA violations, Shaterian seeks rescission, damages, attorney's fees, and costs. *Id.* ¶ 50. With respect to his rescission remedy, Shaterian alleges that he "has the ability to tender the loan amount with the help of business associates," but requests this amount be offset by any TILA damages the Court awards him. *Id.* ¶ 49.

TILA imposes several disclosure requirements on lenders of consumer loans and their assignees. Generally, the law requires a lender to disclose, among other things, the amount financed, the total finance charge, the finance charge expressed as an annual percentage rate, the sum of the amount financed and the finance charge ("total of payments"), and the number, amount, and due dates of payments scheduled to repay the total of payments. *See* 15 U.S.C. § 1638.

Wells Fargo first argues that Shaterian's TILA claim should be dismissed because negative amortization need only be disclosed in the Loan Program Disclosure and need not be repeated in the TILDS. MTD at 6–7. Wells Fargo argues that the adjustable loan program disclosure statement, which is not attached to the SAC or Defendants' RJN, provided Shaterian with adequate disclosures under TILA. *Id.*

Shaterian responds that Wells Fargo's argument misreads the SAC because the alleged TILA violation is broader than just the failure to disclose negative amortization. MTD Opp'n at 10–11. Shaterian also argues that he did not allege Wells Fargo violated TILA by failing to disclose the possibility of negative amortization, but by failing to "clearly and conspicuous-ly" disclose that negative amortization was guaranteed to occur if Shaterian followed the payment schedule provided. *Id.* at 11–12.

Neither party is particularly clear about exactly what TILA requires with respect to the form and content of disclosures. Nevertheless, based on the SAC and the available judicially noticeable facts, the Court cannot conclude that all required TILA disclosures were made. Wells Fargo's Motion to Dismiss does not address all of the TILA violations alleged by Shaterian. Further, the Loan Program Disclosure form, which Wells Fargo contends disclosed that negative amortization would occur, is not before the Court.

■ Wells Fargo next argues that Shaterian's TILA claim for rescission fails because Shaterian cannot tender the money he received through the loan. MTD at 7. Wells Fargo urges the Court not to accept Shaterian's allegation that his business associates will donate the tender amount, pointing to the fact that Shaterian has filed for bankruptcy. *Id.* at 7.

TILA requires that a borrower return all money or property received from the lender to complete a rescission. *See* 15 U.S.C. 1635(b). The Court finds that Shaterian has alleged sufficient facts to show that he could tender the money he received through the loan, and the Court must assume the veracity of all well-pleaded factual allegations on a motion to dismiss. Shaterian need not provide evidence of his ability to tender at this stage. Viewing the SAC in the light most favorable to the pleader, Shaterian's allegation that business associates will help him fund the tender is not implausible.

Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss with respect to Shaterian's first claim for violation of TILA.

## 2. HOLA Preemption (Claims 2 through 10)

Wells Fargo contends that Shaterian's remaining claims, all of which are brought under state law, are preempted by HOLA. MTD at 1–6. Under HOLA, Congress gave OTS authority to issue regulations concerning thrifts such as WSB, Wells Fargo's predecessor in interest. *See* 12 U.S.C. 1464; *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir.2008). Pursuant to HOLA, OTS promulgated a regulation stating that OTS "occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). The regulation further provides that "federal savings associations may extend credit as authorized under federal law … without regard to state laws purporting to regulate or otherwise affect their credit activities." *Id.* Preempted state laws include those relating to "[t]he terms of credit, including amortization of loans and the deferral and capitalization of interest," "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms," and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." *Id.* § 560.2(b). However, state "contract and commercial law," "real property law," and "tort law," among other things, "are not preempted to the extent that they only incidentally affect lending operations … or are otherwise consistent with the purpose [of the regulation]." *Id.* § 560.2(c).

OTS has outlined a framework for evaluating whether or not a state law is preempted under 12 C.F.R. § 560.2:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sep. 30, 1996).

In *Silvas*, the Ninth Circuit employed this framework to determine whether a plaintiff's UCL claims, "as applied," were preempted under OTS regulations. 514 F.3d at 1004–07. In doing so, "the Ninth Circuit focused not on the nature of the cause of action allegedly preempted, but rather on the 'functional effect upon lending operations of maintaining the cause of action.'" *Rumbaua v. Wells Fargo Bank, N.A.,* No. 11–1998 SC, 2011 WL 3740828, at \*7, 2011 U.S. Dist. LEXIS 95533, at \*19 (N.D.Cal. Aug. 25, 2011) (citation omitted). The pertinent question was whether applying a state law to a federal savings association would "impose requirements" concerning activities regulated by OTS. *Id.* This Court has previously held that claims "premised on fraud or promises made by Wells Fargo … are not necessarily preempted, because the only 'requirement' they impose on federal savings banks is that they be held responsible for the statements they make to their borrowers." [3]

---

**3.** Other district courts in this Circuit have reached a conclusion. *See Johannson v. Wachovia Mortg. FSB,* No. WHA, 2011 WL 3443952, at \*8–9, 2011 U.S. Dist. LEXIS 86692, at \*21–23 (N.D.Cal.2011); *DeLeon v. Wells Fargo Bank, N.A.,* No. 10–CV–01390, 2011 WL 311376, at \*6–7, 2011 U.S. Dist. LEXIS 8296, at \*17–19 (N.D.Cal. Jan. 28, 2011); *Ibarra v. Loan City,* No. 09–CV–02228–IEG (POR), 2010 WL 415284, at \*5–6, 2010 U.S. Dist. LEXIS 6583, at \*14–16 (S.D.Cal. Jan. 27, 2010).

*Id.* at *7, 2011 U.S. Dist. LEXIS 95533 at *20.

In light of this framework, the Court finds that Shaterian's third, fourth, fifth, sixth, seventh, eighth, and ninth claims are not preempted by HOLA. Wells Fargo argues that these claims are preempted by 12 C.F.R. § 560.2(b) because they pertain to terms of credit, disclosure, and the process, origination, or sale of mortgages. MTD at 3. The Court disagrees. These claims relate to general legal duties with which every business must comply and only incidentally affect Wells Fargo's lending practices. Shaterian's fraud claims, i.e., claims three, six, and nine, do not impose additional requirements concerning lending operations regulated by OTS other than the general requirement that Wells Fargo is prohibited from misrepresenting material facts and defrauding its borrowers. Shaterian's contract claims, i.e., claims four, five, and eight, merely seek to force Wells Fargo to adhere to the terms of its agreements with Shaterian. The Court has already held Shaterian's claim for violation of California Civil Code Section 2923.5 is not preempted by HOLA. *See* ECF No. 52 at 8 n. 7. Additionally, these claims clearly fit within the categories of laws which are exempted from preemption under 12 C.F.R. § 560.2(c) as they sound in tort, contract, commercial, and real property law.

In contrast, Shaterian's second claim for fraudulent omissions relates to substantive lending requirements. Other district courts in this circuit have found that even claims for fraud or misrepresentation may be preempted where they relate to inadequate disclosures of fees, interest rates, or other loan terms. *See DeLeon,* 2011 WL 311376, at *5–6, 2011 U.S. Dist. LEXIS 8296, at *16–17. Such claims impose additional substantive requirements relating to lending activities regulated by OTS. *See id.* Shaterian's

second claim for fraudulent omissions relates to WSB's duty to make various disclosures in loan documents, including the Note and the TILDS. *See* SAC ¶ 52. Accordingly, this claim is preempted by HOLA.

Shaterian's tenth claim asks the court for a declaration concerning the legal and factual issues set forth in the first nine claims. The Court finds that this claim is preempted to the extent it seeks a declaration concerning Shaterian's claim for fraudulent omissions.

Accordingly, the Court DISMISSES Shaterian's second claim for fraudulent omissions as it is preempted by HOLA.

### 3. Claim for Violation of the California UCL (Claim 3)

Shaterian alleges that Wells Fargo violated the California UCL by luring him and other borrowers into Option ARM loans with promises of low payments while withholding the fact that these loans were designed to cause negative amortization. SAC ¶¶ 70–71.

Wells Fargo argues that Shaterian's UCL claim is preempted by TILA because it asserts a failure to disclose information in the TILDS or other required TILA disclosure. MTD at 19. The Court disagrees. TILA does not preempt state laws, "except to the extent that those laws are inconsistent" with TILA. 15 U.S.C. § 1610; *Silvas,* 514 F.3d at 1007. For example, district courts in this circuit have held that UCL claims based on false or misleading oral representations are not preempted by TILA because TILA regulates only written disclosures. *See Yang v. Home Loan Funding, Inc.,* No. CV F 07–1454 AWI GSA, 2010 WL 670958, at *10–11, 2010 U.S. Dist. LEXIS 21837, at *28–29 (E.D.Cal. Feb. 18, 2010); *Kajitani v. Downey Sav. & Loan Ass'n,* 647 F.Supp.2d 1208, 1220 (D.Haw.2008). When the SAC is liberally construed, Shaterian's UCL

claim does not solely rest on allegedly false statements in the TILDS or other written disclosures required by TILA. The UCL claim is also predicated on allegations concerning "promises of low payments" and other means by which Wells Fargo "trumpeted their low payment loans to the public." *See, e.g.,* SAC ¶¶ 71, 73. The Court finds that Shaterian's UCL claims are not preempted to the extent they are based on allegations of misconduct outside of written deficiencies in the TILDS or other required TILA disclosures.

Wells Fargo also argues that the UCL claim fails "substantively" because the Note disclosed the possibility that the principal amount due on the loan would increase if payments were insufficient to cover interest. MTD at 20. Wells Fargo claims that, with an ordinary calculator, Shaterian should have been able to figure out that his principal amount would increase. *Id.* The Court finds this argument unpersuasive, as it ignores Shaterian's allegations concerning false promises of a "low, fixed payment" and "only a small annual increase in the payment amount." *See* SAC ¶ 70. As the terms of the Note were allegedly contradicted by these false promises, it is plausible that Shaterian was misled. Further, Wells Fargo offers no authority suggesting that a UCL claim fails where a borrower should be able to see through alleged lies and omissions by performing potentially complicated interest and principal calculations. Nor does Wells Fargo point to any particular language in the Note which indicated, in a straightforward way, that the loan would result in negative amortization.

Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss with respect to the third claim for violation of the California UCL.

### 4. Claim for Breach of Written Contract (Claim 4)

As to the fourth claim for breach of contract, Shaterian alleges that WSB "expressly and/or through its conduct and actions agreed that Plaintiff's monthly payment obligation would be sufficient to pay both the principal and interest owed on the loan." SAC ¶ 94. Shaterian alleges that WSB and Wells Fargo breached this agreement when they failed to apply any portion of Shaterian's monthly payments towards the principal balance on the loan. *Id.* ¶ 96.

Wells Fargo argues that Shaterian fails to allege a breach of contract because the Note does not contain a promise that Shaterian's payments would be sufficient to pay off both the interest and principal on the loan. MTD at 7–8. Wells Fargo points out that Shaterian has acknowledged that a pick-a-payment loan allows a borrower to select an interest-only, or even smaller, minimum payment. *Id.* at 8 (citing SAC ¶ 16). Thus, Wells Fargo argues, it was Shaterian who determined whether his payments would cover both principal and interest. *Id.* Shaterian responds by quoting much of the language from his fourth claim without further analysis, and by pointing to a provision in the Note that states: "I [Shaterian] will pay Principal and interest by making payments every month." *Id.*

The Court finds that this language does not constitute a promise by WSB or Wells Fargo that Shaterian's monthly payments would cover principal and interest. Shaterian's conclusory allegation that WSB "expressly and/or through its conduct" made such a promise is insufficient to state a claim for breach of contract. Accordingly, the Court DISMISSES Shaterian's fourth claim.

### 5. Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 5)

Shaterian's fifth claim for breach of the implied covenant of good faith and fair dealing mirrors his claim for breach of contract. Shaterian alleges that the Note and TILDS "expressly and impliedly" provided that negative amortization would not occur if Shaterian made his monthly payments. SAC ¶ 104. Shaterian further alleges that, contrary to these provisions, WSB did not apply any part of Shaterian's payments to the principal on the loan. *Id.* ¶ 106.

Wells Fargo argues that the claim is time barred since the statute of limitations for a breach of implied covenant of good faith and fair dealing is two years, the breach allegedly occurred in 2007, and Shaterian did not bring this action until 2011. MTD at 10. Shaterian responds that the statute of limitations was tolled by a 2007 class action in which he is a plaintiff. MTD Opp'n at 16. Wells Fargo does not offer a response to this argument. Accordingly, the Court finds the implied covenant claim is not time-barred.

 Wells Fargo also argues that the implied covenant claim is superfluous because it is duplicative of Shaterian's contract claim. MTD at 10. Where allegations for breach of the implied covenant "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (Ct.App.1990). However, this rule does not apply where a plaintiff alleges that the defendant acted in bad faith to frustrate the contract's actual benefits. *See Celador Int'l Ltd. v. Walt Disney Co.,* 347 F.Supp.2d 846, 852 (C.D.Cal.2004); *Guz v. Bechtel Nat'l, Inc.,* 24 Cal.4th 317, 353 n. 18, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000).

 In the instant case, Shaterian has not gone beyond alleging a breach of the implied and express terms of the Note and TILDS. The SAC alleges that Wells Fargo and WSB acted in bad faith by failing to make clear and conspicuous disclosures concerning the monthly payments sufficient to cover his interest and principal. However, these actions were presumably taken to induce Shaterian to enter into the contract, not to frustrate the benefits of the contract. Further, Shaterian's bad faith allegations are too vague to state a plausible claim for relief. Accordingly, the Court DISMISSES Shaterian's fifth claim for breach of the implied covenant of good faith and fair dealing.

### 6. Claim for Aiding and Abetting Fraud (Claim 6)

Shaterian's aiding and abetting fraud claim is premised on allegations that WSB and Diablo engaged in a "joint venture" to induce borrowers, including Shaterian, to enter into unfavorable loans. SAC ¶¶ 117–133. Wells Fargo moves to dismiss this claim on the grounds that: (1) it lacks particularity; (2) Wells Fargo cannot be held liable for Diablo's actions; (3) the claim does not identify an actionable misrepresentation; and (4) the claim is preempted by TILA. MTD at 16–19.

 Rule 9(b) of the Federal Rules of the Civil Procedure requires a plaintiff to "state with particularity the circumstances constituting fraud." This includes "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (citation and quotations omitted). Under California

law, aiding and abetting liability extends to a person who aids and abets an intentional tort where that person: (1) had actual knowledge of the underlying wrongful conduct, and (2) gave substantial assistance or encouragement to another to so act. *See Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App.4th 1138, 1144, 26 Cal.Rptr.3d 401 (Cal.Ct.App.2005).

■ Wells Fargo argues that Shaterian has not alleged with particularity what misrepresentations Diablo made, or when and how those statements were made. The court disagrees. Shaterian pled that around August 2007 a Diablo agent, Juanita Garcia Apodaca ("Apodaca"), told Shaterian that he qualified for a six percent fixed rate loan that would eventually adjust to a lower rate and encouraged him to sign blank documents. SAC ¶ 129. Shaterian further alleges that these representations turned out to be false, as he entered into an Option ARM loan with an interest rate that ultimately increased over time. These allegations meet the heightened pleading standards of Rule 9(b).[4]

The Court also disagrees with Wells Fargo's contention that Shaterian's allegations concerning the relationship between WSB and Diablo are too conclusory to state a claim for aiding and abetting. MTD at 17. Shaterian alleges that WSB and Diablo, Shaterian's broker, entered into an agreement whereby WSB "dictated and pre-approved" certain loan and disclosure documents which Diablo provided to borrowers. SAC ¶ 125. Shaterian further alleges that WSB was aware that these documents contained "fraudulent omissions" and knew or should have known that Diablo encouraged borrowers to sign blank loan documents, and that Diablo later completed these loan documents with

information which differed from the information provided to the borrowers. *Id.* ¶¶ 127–128. Shaterian is informed and believes that Diablo received "substantial remuneration" from WSB for carrying out this scheme. *Id.* ¶ 121. Such allegations are sufficient to establish that WSB had actual knowledge of the alleged fraud and provided substantial assistance in carrying it out. *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F.Supp.2d 1149, 1161–62 (C.D.Cal.2011).

Wells Fargo further argues that it cannot be held liable for the actions of Diablo since loan brokers are "customarily" the agents of the borrower and because lenders do not owe borrowers a fiduciary duty of care. MTD at 18. These arguments are unpersuasive and irrelevant. Regardless of the "customary relationship" between brokers, lenders, and borrowers, Shaterian has specifically alleged that WSB drafted and approved loan documents Diablo used to mislead borrowers and that Diablo received substantial remuneration from WSB. *See* SAC ¶¶ 121, 125. These allegations are sufficient to establish the elements of aiding and abetting. Further, under California law, a lender may owe a duty to its borrowers where it "actively participates in the financed enterprise beyond the domain of the usual money lender." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal.App.3d 1089, 1096, 283 Cal.Rptr. 53 (Cal.Ct.App.1991) (quotations and citation omitted). In the instant action, Shaterian has alleged that WSB stepped out of its usual role as a lender by engaging in a joint venture with Diablo to induce Shaterian to agree to an unfavorable loan. *See* SAC ¶¶ 121, 125.

---

4. Wells Fargo argues that Apodaca's representations are irrelevant since the "loan unambiguously discloses" an adjustable interest rate. Reply at 5. However, Shaterian alleges

that he "was uncertain at the time he signed the closing document—executed in blank—of exactly what type of loan he was getting." SAC ¶ 15.

The Court also finds that Shaterian's aiding and abetting fraud claim is not preempted by TILA. As discussed above, TILA only preempts state law causes of action to the extent that they are predicated on allegedly false statements in TILDS or other written disclosures required by TILA. Shaterian's aiding and abetting claim alleges other types of wrongful conduct, including allegedly false statements made by Apodaca.

Accordingly, the Court DENIES Wells Fargo's motion to dismiss with respect to Shaterian's sixth claim for aiding and abetting fraud.

### 7. Claim for Violation of California Civil Code Section 2923.5 (Claim 7)

■ California's Civil Code provides a framework for non-judicial foreclosure: the lender must first record a notice of default; once three months have elapsed, the lender must give notice of the planned foreclosure sale. Cal. Civ.Code § 2924. Section 2923.5 concerns the notice of default. It requires the "mortgagee, trustee, beneficiary, or authorized agent" seeking to file a notice of default to first contact the borrower in person or by telephone "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Id. § 2923.5(a)(2). The notice of default may not be filed until thirty days after this initial contact or after the statute's due diligence requirements are satisfied. Id. § 2923.5(a)(1). Further, the notice of default must include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower. Id. § 2923.5(b). During this initial contact, the party seeking to file a notice of default must advise the borrower that he or she has the right to request a subsequent meeting and, if requested, schedule the meeting within fourteen days. Id. § 2923.5(a)(2). The remedy available under Section 2923.5 is the postponement of a foreclosure sale until the requirements of the statute have been fulfilled. Mabry v. Super. Ct., 185 Cal.App.4th 208, 213, 110 Cal.Rptr.3d 201 (Cal.Ct.App.2010).

■ In the declaration filed with the October 2010 Notice of Default, Wells Fargo vice president Sandra Garza ("Garza") declares that Wells Fargo contacted Shaterian on March 13, 2011 as required by Section 2923.5. SAC ¶ 137; Not. of Default at 3. Shaterian alleges that this declaration was false and that he had not been contacted by anyone from Wells Fargo to assess his financial situation and discuss options, or to arrange a subsequent meeting. SAC ¶ 138. Shaterian asks the Court for an order declaring that the Notice of Default is not valid and that Wells Fargo may not proceed with foreclosure. Id. ¶ 140.

Wells Fargo argues that Shaterian's Section 2923.5 claim should be dismissed because the SAC shows that it complied with the statute. MTD at 19. Specifically, the SAC shows that Shaterian had multiple discussions with Kearny, a Wells Fargo representative, concerning a loan modification between June and August 2010, over thirty days prior to the filing of the October 2010 Notice of Default. See SAC ¶¶ 143–149. However, as Shaterian argues, these later discussions with Kearny would not cure the alleged defect in the Garza Declaration, which states that Shaterian was contacted in March 2010. If, as Shaterian alleges, the Garza declaration is false, then Wells Fargo failed to comply with Section 2923.5(b), which requires that a notice of default include a declaration that the "the mortgagee, beneficiary, or authorized agent" has contacted the borrower. Allowing a Cal–Western to file a notice of default based on a false declaration would defeat the purpose of the statute.

Wells Fargo also argues that Shaterian's Section 2923.5 claim fails because, in denying Shaterian's motion for a preliminary injunction, the Court accepted evidence submitted by Wells Fargo supporting the veracity of the Garza declaration. MTD at 19. The Court disagrees. In evaluating Shaterian's motion for a preliminary injunction, the Court could consider evidence outside the pleadings to determine whether Shaterian was likely to succeed on the merits. Here, the Court may only consider whether Shaterian states a plausible claim for relief. Assuming that Shaterian's allegation concerning the veracity of the Garza declaration is true, Shaterian states a plausible claim under Section 2923.5.

Finally, Wells Fargo contends that Shaterian's seventh claim fails because the Court has already denied the only remedy available under Section 2923.5–postponement of the foreclosure sale. MTD at 20. This argument might be persuasive if the foreclosure sale had already occurred. However, there is no indication that it has. Further, although the Court denied Shaterian's motion for a preliminary injunction, an injunction may still issue if Shaterian is successful on the merits.

Accordingly, the Court DENIES Wells Fargo's Motion to Dismiss with respect to Shaterian's seventh claim for violation of California Civil Code Section 2923.5.

### 8. Claim for Breach of Oral Contract (Claim 8)

Shaterian's claim for breach of oral contract is based on Kearny's alleged promise that Wells Fargo would modify Shaterian's loan if he could demonstrate an income of at least $9,500 per month. SAC ¶¶ 149, 158. Wells Fargo allegedly breached this promise by rejecting Shaterian's October and November 2010 loan modification applications, even after Shaterian demonstrated a monthly income of $10,000 to $15,000. *Id.* ¶¶ 150–51. Wells Fargo ar-

gues that Kearny's promise did not create a contract because Shaterian did not offer any consideration in return. MTD at 12. Shaterian responds that he offered consideration by providing Wells Fargo with requested forms and access to his tax return information. MTD Opp'n at 20. The Court agrees with Wells Fargo.

Under the California Civil Code, "[a] sufficient cause or consideration" "is essential to the existence of a contract." Cal. Civ.Code § 1550. Further, "a contract in writing may be modified by an oral agreement supported by new consideration." Cal. Civ.Code § 1698(c). Consideration is defined as either (1) "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled," or (2) "any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer." *Id.* § 1605. "[I]f one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration." *Reyes v. Wells Fargo Bank, N.A.,* No. C–10–01667 JCS, 2011 WL 30759, at *11, 2011 U.S. Dist. LEXIS 2235, at *31 (N.D.Cal. Jan. 3, 2011) (quoting *Pease v. Brown,* 186 Cal.App.2d 425, 431, 8 Cal.Rptr. 917 (Cal.Ct.App.1960)).

■ In the instant action, Shaterian has not pled a benefit conferred or prejudice suffered. The forms and tax returns provided by Shaterian cannot constitute consideration because such consideration has absolutely no value. *See Mehta v. Wells Fargo Bank, N.A.,* 737 F.Supp.2d 1185, 1197 (S.D.Cal.2010). Additionally, the alleged oral contract did not place any conditions on Shaterian and left him free to withdraw. Kearny merely informed Shaterian of the conditions under which a resubmitted loan modification application

might be approved—Shaterian was under no obligation to resubmit the application.

As Shaterian has not pled adequate consideration, the Court DISMISSES Shaterian's eighth claim for breach of oral contract.

### 9. Claim for Fraud through Misrepresentation in Oral Contract (Claim 9)

Shaterian's ninth claim for fraud through misrepresentation in oral contract is premised on the same conduct as his claim for breach of oral contract. The Court has already found that Shaterian has failed to allege the existence of a valid oral contract. *See supra* section IV.A.8. Absent a valid contract, Shaterian may not state a claim for fraud through misrepresentation in an oral contract. *See Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525 WQH (WMC), 2010 WL 761236, at *5, 2010 U.S. Dist. LEXIS 18476, at *13 (S.D.Cal. Mar. 2, 2010). Accordingly, the Court DISMISSES Shaterian's ninth claim.

### 10. Claim for Declaratory Relief (Claim 10)

Shaterian's tenth claim seeks a declaration concerning the rights and duties of the parties with respect to his first nine claims. This claim is ultimately a request for relief, and Shaterian is not entitled to such relief absent a viable underlying claim. *See Lomboy v. SCME Mortg. Bankers*, C–09–1160 SC, 2009 WL 1457738, at *3, 2009 U.S. Dist. LEXIS 44158, at *8 (N.D.Cal. May 26, 2009). Accordingly, the Court DISMISSES Shaterian's claim for declaratory relief to the extent it seeks a declaration concerning Shaterian's dismissed claims, i.e., claims two, four, five, eight, and nine.

### B. *Wells Fargo's Motion to Strike*

Wells Fargo moves to strike paragraphs 64, 65, 111, 116, 131, 133, and 174, all of which relate to punitive damages. This Order only considers Well Fargo's Motion to Strike as it relates to paragraphs 131, 133, and 174—which concern Shaterian's claim for aiding and abetting fraud and his prayer for relief. Paragraphs 64, 65, 111, and 116 relate to Shaterian's second and fifth claims, which are dismissed by this Order. Accordingly, Wells Fargo's motion to strike is DENIED AS MOOT as to paragraphs 64, 65, 111, and 116.

Under California law, punitive damages are permitted where "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a). As Wells Fargo is a corporate employer, Shaterian must show a Wells Fargo officer, director, or managing agent "authorized or ratified the wrongful conduct ... or was personally guilty of oppression, fraud, or malice." *Id.* § 3294(b).

In his aiding and abetting fraud claim, Shaterian alleges that the "conduct of DIABLO and WORLD SAVINGS was malicious, oppressive, and/or fraudulent." SAC ¶ 131. He further alleges that WSB "knew, or should have known, that DIABLO, through its agents, employees, and assigns was using [WSB's] financing, name, and goodwill in a fraudulent scheme that included breaches of fiduciary and contractual duties." *Id.* ¶ 124. Wells Fargo argues that Shaterian's punitive damages allegations should be struck because he has not alleged that an officer, director, or managing agent authorized or ratified wrongful conduct or acted with malice, oppression, or fraud. MTS at 1–2. In response, Shaterian argues that pick-a-payment loans, which he contends are inherently deceptive, would not have been made available but for the authorization and ratification of high level employees at WSB. MTS Opp'n at 6–7. He also argues WSB was put on notice of the toxicity of pick-a-payment loans by lawsuits filed pri-

or to the submission of Shaterian's loan application. *Id.* at 7.

Viewing the SAC in the light most favorable to Shaterian, it does not appear to contain "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R.Civ.P. 12(f). Shaterian alleges that he is entitled to punitive damages for his aiding and abetting fraud claim because WSB knew or should have known that Diablo engaged in a " 'fraudulent' scheme and the conduct of Diablo and WSB was malicious, oppressive, and/or fraudulent." SAC ¶¶ 124, 131. Shaterian also alleges certain facts suggesting that WSB authorized or ratified his loan. As motions to strike are generally disfavored, these allegations are sufficient. Accordingly, Wells Fargo's Motion to Strike is DENIED.

## V. *CONCLUSION*

For the foregoing reasons, the Court GRANTS in part and DENIES in part Wells Fargo's Motion to Dismiss. This is the third complaint filed by Shaterian. Further, as Shaterian has stated, Wells Fargo's prior motion to dismiss, though never ruled on, provided guidance as to which claims required more specificity and which claims were likely to be preempted. *See* ECF No. 54 ("Joint Statement") at 2. Accordingly, the Court DISMISSES Shaterian's second, fourth, fifth, eighth, and ninth claims WITHOUT LEAVE TO AMEND. The Court DENIES Wells Fargo's Motion to Dismiss with respect to Shaterian's first, third, sixth, seventh, and tenth claims. The Court also DENIES Wells Fargo's Motion to Strike.

IT IS SO ORDERED.